# REPORTS

OF

# CASES ARGUED AND DETERMINED

## AT JANUARY TERM, 1853.

## BEN *vs.* THE STATE.

1. In an indictment against a slave for administering poison to white persons, a count is not demurrable for duplicity which charges that the defendant " *did administer to, and cause to be administered to* and taken by" *three* certain free white persons, "a large quantity of arsenic," &c.

2. When the indictment alleges that the defendant " did administer to, and cause to be administered to and taken by," &c., a certain deadly poison, "with the intent then and there felvniously," &c., "to kill and murder" the persons named, it sufficiently charges a violation of the statute (Clay's Dig. 472, § 4,) although not using the same words.

3. When the record shows that the prisoner was regularly arraigned, and pleaded not guilty, and proceeded to trial without any objection, the objection cannot be raised in the Appellate Court, that the record fails to show that he was served with a copy of the indictment and a list of the jury, two entire days before the trial, or that the *venire* was returned into court.

ERROR to the Circuit Court of Pickens.

Tried before the Hon. TURNER REAVIS.

This was an INDICTMENT against the plaintiff in error, a slave, for attempting to administer poison to white persons. The indictment, after the usual caption, charges, that the said Ben, a slave, on the twenty-fourth day of December, one

2

thousand eight hundred and fifty-one, in the county of Pick-
ens in the State of Alabama, "feloniously, wilfully, and of
his malice aforethought, did administer to, and cause to be
administered to and taken by one George McKinney, Marga-
ret A. McKinney and one Nancy Herndon, then and there
being free white persons, a large quantity of arsenic, to-wit:
one-half ounce thereof; which said arsenic, so administered
and caused to be administered as aforesaid, was then and there
a deadly poison, calculated in its effects to destroy life, with
intent then and there and thereby, feloniously, wilfully and of
malice aforethought, the said George McKinney, Margaret A.
McKinney and Nancy Herndon to kill and murder, against
the peace of the State," &c.

The record shows, that the prisoner, being present in court,
and being arraigned, and the bill of indictment having been
read to him, pleaded thereto " not guilty, and put himself
upon the country," &c.

A day was thereupon set for the prisoner's trial, and it was
ordered by the court that the sheriff proceed to summon
*instanter* fifty good and lawful men, including those of the
regular pannel for the second week of the term, two-thirds
of whom should be slaveholders, from whom a jury were to
be selected. It was, at the same time, ordered by the court,
that the sheriff of said court serve upon the prisoner, or upon
his counsel, Stephen P. Hale and Jonathan Bliss, Esqrs., a
copy of the bill of indictment, together with a list of the
jurors summoned, two entire days before the day set apart for
the trial. These orders were made on the 22d April, 1852.

Afterwards, on the 27th of the same month, the record
shows, that the prisoner came into court and entered his plea
of not guilty, and on his motion, the cause was continued
until the next term.

At the next term, the prisoner, on being again brought into
court, by leave of the court withdrew his plea of not guilty,
and demurred to the indictment. A day was set for his trial,
and a jury ordered to be summoned.

Upon the trial, the court overruled the demurrer to the in-
dictment, and the prisoner again pleaded not guilty. There-
upon, the jury found him guilty as charged, and the court
sentenced him to be executed. The grounds urged for a re-
versal of this judgment will appear in the opinion.

BLISS & HALE, for plaintiff in error.

M. A. BALDWIN, Attorney General, *contra.*

CHILTON, C. J.—1. It is contended by the counsel for the prisoner, that the indictment in this case is bad, because it charges the commission of several offences in one count— as, 1st. That the prisoner administered the poison to the persons named; 2d. That he caused the same to be administered; and 3. That he administered and caused it to be administered to three individuals. We have examined these objections to the indictment with much care, and are constrained to hold that they are not well taken. It is certainly true, that an indictment must not be double; that is, the defendant must not be charged with having committed two or more offences in any one count. For example, it is not permissible to charge a defendant in the same count with having committed murder and robbery. Archb. Cr. Pl. 50. Mr. Archbold says, the only exceptions to this rule are to be found in indictments for burglary, in which it is usual to charge the defendant with having broken and entered the house with intent to commit a felony, and also with having committed the felony intended; and in indictments for embezzlement by clerks and servants, which, under the English statute, (7 and 8 Geo. 4, C. 29, § 8,) may charge any number of distinct acts not exceeding three. But he says, that laying several overt acts in a count for high treason is not duplicity, citing Kelyng 8; nor is a count that the defendant published and caused to be published a libel, liable to this objection, since, he says, they are the same offence; so of a count charging one endeavor to commit two offences, because the endeavor is the gist of the offence; and he further adds, that "it is now generally understood that a man may be indicted for the battery of two or more persons in the same count, or for a libel on two or more persons where the publication is the same act."—ib. 50; Rex v. Benfield et al., Burr. Rep. 982, overruling Rex v. Clendon, as reported in 2 Str. 870, and 2 Ld. Raym. 1572.

Several decisions in this court go very clearly to sustain the sufficiency of the count in this case. In The State v. Murphy, 6 Ala. Rep. 846, it was held, that although the language

of the statute was in the disjunctive, against any one who should "buy, receive, conceal, or aid in the concealment of stolen goods," yet that a count was not bad for duplicity which charged the prisoner with receiving and concealing stolen goods.

In Mooney v. The State, 8 Ala. Rep. 328, the defendant, with two others, was charged in the same count, for that, on a certain day, they "did unlawfully and feloniously inveigle, steal, carry and entice away, two negro slaves," &c.; and upon a demurrer this court said: "These are all offences of the same grade, although there may be a slight distinction between the two classes of "stealing and carrying away," and "inveigling and enticing;" and it was there held that, "whether they were distinct offences or not, inasmuch as the same penalty was provided for each, they might be included in the same count in the indictment." We do not understand the court as holding that substantive and entirely distinct offences may be thus united, because the punishment is the same, but that when "different grades of the same offence," and which are punished by the same penalty, are embraced in one count, it is sufficient, and the State is entitled to the conviction of the accused upon proving either. The example of an indictment for forgery is a forcible illustration of the rule, in which, according to Mr. Chitty's forms, (3 Chit. Cr. L. 1066,) it is usual to aver, that the prisoner "feloniously did falsely make, forge and counterfeit, and feloniously did falsely procure to be made, forged and counterfeited, and feloniously did willingly act and assist in the false making, forging and counterfeiting, a certain bond," &c. Mooney v. The State, 8 Ala. Rep. 332, and cases cited in that opinion. These cases, we think, are sufficient to show that the indictment before us is not liable to the objection of duplicity. The offence consists in the attempt to destroy life, by administering to a white person any deadly poison; and that by this effort he compasses the lives of three instead of one, or that he places the poison in such a situation as to cause them to take it with the intent thereby of depriving them of life, and does not hand it to them himself, does not change the nature of the offence, except in so far as they may be considered circumstances of aggravation; nor do they in any wise affect the penalty.

2. But it is objected, in the second place, that this is not for an attempt to poison, but for the actual administering of poison, and causing it to be administered to several persons. It is not denied "that the attempt to poison" is fully comprehended in the charge contained in the indictment, and that all the constituent elements of the offence, as the same is denounced by the statute, must necessarily be proved in order to sustain the charge. The objection is, that the language of the statute has not been pursued; that equivalent expressions will not suffice, and that if such were the law, it is maintained by the counsel that the charge in this indictment does not make out the statutory offence.

The statute declares that any slave who shall attempt to poison, or to deprive any white person of life by any means not amounting to an assault, and be thereof convicted, shall suffer death. (Clay's Dig. 472 § 4.)

The charge is, that the prisoner "feloniously, wilfully, and of his malice aforethought, did administer to, and cause to be administered to and taken by one George McKinney, Margaret A. McKinney, and one Nancy Herndon, then and there being free white persons, a large quantity of arsenic, to wit: one-half ounce thereof, which said arsenic, so administered and caused to be administered, was then and there a deadly poison, calculated in its effects to destroy human life, with intent, then and there, feloniously, wilfully and of his malice aforethought, to kill and murder," &c., the persons named. It is too plain to admit of argument, that the wilful and malicious infection of the system with a deadly poison, with the intent to destroy life, is an attempt to poison within the meaning of the statute, and unless the rule is so stringent as to require the offence to be charged in the exact words of the statute, the indictment is unquestionably good. And here we need only to refer to the case of The State v. Bullock, 13 Ala. Rep. 413, to show that the indictment need not contain the exact words used in the statute, but that it is sufficient if the words used as descriptive of the offence be equivalent to those employed in the statute. We entertain no doubt of the correctness of this proposition. It is laid down in the works upon the criminal law, "that where a word not in the statute is substituted for one that is, and the

word thus substituted is equivalent to that employed in the statute, or is of more extensive signification than it, and includes it, the indictment will be sufficient." See Archb. Cr. Pl. 47, and authorities cited by him. Indeed, it often happens that an indictment charging an offence in the language of the statute is wholly insufficient; as if a statute uses a generic term, it is said to be necessary to state the species. Rex v. Fuller, 1 B. & P. 180; Arch. Cr. Pl. 48. So, if the statute does not define the offence, or point out its constituents, the indictment should aver such facts and circumstances as will constitute the offence within the meaning of the legislature. It must be made judicially to appear to the court, that the indictor has proceeded upon sufficient premises. Beasley v. The State, 18 Ala. Rep. 535. In the case of The State v. Clarissa, 11 Ala. Rep. 57, this court was called upon to construe the statute now under consideration, and to determine upon the sufficiency of an indictment which appears to be the counterpart of this, except that it failed to charge that the drug, (the seed of James-town weed,) was poisonous, and calculated in its effects to destroy human life; and for this defect, the indictment was held bad. This necessary averment is contained in the indictment before us, which appears in all respects to conform to the ruling of the court as contained in the opinion last cited.

3. Having determined that the offence denounced by the statute is sufficiently described in the indictment, it follows that the third and fourth objections, namely, that the Circuit Court had no jurisdiction of the offence, and therefore erred in pronouncing the sentence prescribed by the statute, cannot be supported. It only remains to consider the fifth and last ground of objection to the regularity of the conviction, which is, that the record fails to show that the prisoner was served with a copy of the indictment and list of the jury, two entire days before his trial, or that the *venire* was returned into court. The case of The State v. McLendon, 1 Stew. Rep. 190, is cited to support this objection; but it will be observed that the counsel for the prisoner in that case, when the prisoner was brought before the bar for trial, objected that the list of the jury had not been furnished either to the prisoner or his counsel, two entire days before, &c.; and this was

shown affirmatively by the record to be true. The court very properly held, that it was erroneous to exclude him from this benefit, and reversed the conviction. In the case before us, however, no such objection was raised in the primary court; nor is there anything apparent upon the record, from which it may be inferred that the prisoner had not the benefit of the list of jurors and copy of the indictment, or that the jury were not returned into court as required by its order. The prisoner appears to have been regularly arraigned, and pleaded not guilty; and after being allowed to withdraw his plea for the purpose of demurring, he again puts it upon record, and goes to trial without any objection. The law will not intend that he was put upon trial without a regular jury, against the entry which recites that twelve good and lawful men composed the jury, nor that the court denied him any right to which by law he was entitled. The Circuit Court is one of general plenary jurisdiction, and intendments against the regularity of its proceedings are not to be indulged. Similar objections were taken in the case of The State v. Williams, 1 Stew. Rep. 454, 462–3, and were overruled.

After a patient examination of the case, we are fully satisfied that there is no error in the record, and the judgment must consequently be affirmed.

As the sentence of execution of the prisoner was postponed, by order of one of the judges in vacation, under the provisions of the statute, it is necessary that another day be fixed. The day for his execution will accordingly be designated in the entry of affirmance.