## CHEEK vs. THE STATE.

[INDICTMENT AGAINST OWNER FOR NEGLIGENT TREATMENT OF SLAVES.]

1. *Joinder of offenses in indictment.*—An indictment, which charges that the prisoner, being the owner of certain slaves, "did fail to provide them with a sufficiency of healthy food or necessary clothing, or to provide for them properly in sickness or old age," (Code, §§ 3297-98,) is not objectionable for duplicity, although a conviction might be had on proof of negligent treatment in any one of the specified particulars; nor does the joinder of the names of several slaves, in the same count, render it obnoxious to that objection, although a conviction might be had on proof of the negligent treatment of any one of them.

2. *Description of slaves in indictment.*—In such an indictment, slaves whose names are to the grand jurors unknown, may be thus described, if by the use of due diligence their names cannot be ascertained; but, if it is shown on the trial that, at the time the indictment was found, their names were in fact known, or could have been ascertained by due diligence, the defendant will be entitled to an acquittal as to them; yet proof of the single fact that their names were known at the time of the trial, without more, would not entitle him to an acquittal.

3. *Election by prosecution.*—Under such an indictment, charging the negligent treatment of several slaves, if it should appear on the trial that the offenses as to the several slaves were distinct, it would be the duty of the court to compel an election by the prosecution; yet, if all the slaves are on the same plantation, and the defendant's conduct towards all of them in the aggregate is relied on for a conviction, there is no ground for such compulsory election.

4. *Opinion of witness as expert.*—A person who has served in the capacity of an overseer on plantations for sixteen months, is competent to give his opinion, as an expert, in reference to the amount of food which is sufficient for a plantation slave.

5. *Relevancy of evidence, as showing quantity of meat furnished to defendant's slaves.*—The indictment having been found in May, 1860, and the

prosecution having proved that, in the year 1859, all the meat on the defendant's plantation was consumed by midsummer, and that meat was afterwards supplied to the plantation from his residence,—it is competent for the defendant to prove that, in December, 1858, (outside of the time covered by the indictment,) a specified number of hogs were killed on the plantation, the meat of which was kept there for the use of the slaves.

From the Circuit Court of Lowndes.
Tried before the Hon. JOHN K. HENRY.

THE indictment in this case was found at the May term, 1860, and contained but a single count, which was as follows: "The grand jurors of said county charge, that, before the finding of this indictment, Randall Cheek was the master, or person standing in that relation to certain slaves, to-wit, Bob, Anderson, and Mose, and divers others whose names are to the grand jurors aforesaid unknown, and, as such, did fail to provide them with a sufficiency of healthy food or necessary clothing, or to provide for them properly in sickness or old age." The defendant demurred to the indictment, but the causes of demurrer assigned are not stated in the record. The court overruled the demurrer, and he then pleaded not guilty.

On the trial, as appears from the bill of exceptions, the State introduced one Snelgrove as a witness, who was the overseer on the defendant's plantation in Lowndes county, from February, until October, 1859, and who testified, that among the slaves on said plantation was one named Mose, another named Anderson, and two named Bob,— one being called "Old Bob," and the other "Short Bob." "The State then proved, by said witness, the amount of food which was furnished to said Mose during the period of twelve months before the indictment was found, for the purpose of showing that he was not sufficiently fed; and the proof, as to Mose, tended to show this fact. The State then proposed to make the same proof as to Anderson and the two Bobs; to which the defendant objected, on the ground that the State had elected to proceed for the offense of not sufficiently feeding the slave Mose, and because the

two Bobs were not sufficiently described in the indictment; which objection the court overruled, and admitted the evidence, and the defendant excepted." The court also allowed the prosecution, against the defendant's objection, to make the same proof in reference to the other slaves on the defendant's said plantation, not named in the indictment; and the defendant reserved an exception to the admission of this evidence.

The only evidence adduced by the prosecution, in reference to the manner in which the slaves were fed, was the testimony of said Snelgrove, who stated that, "while he was overseer on said plantation, said slaves were each allowed, by the direction of the defendant, only one quarter of a pound of bacon per day, and no other meat, and were not allowed any bacon at all on Sunday; that they were also allowed as much corn-meal as they wanted, and, during the summer, a very few vegetables and roasting-ears, and about a pint of butter-milk per day, and sometimes a little butter." It was also shown that said Snelgrove, in addition to the time he was in defendant's employment, had only served as an overseer about eight months during the year 1858. The court allowed him to testify, against the defendant's objection, "that one and a half pounds of bacon per week was not, in his opinion, sufficient for each of said slaves, with the other food furnished to them as above stated; and that less than three pounds, or three and a half, per week, was not a sufficient quantity of bacon for a plantation slave;" and to the admission of this evidence the defendant also reserved an exception. Snelgrove having testified, on the part of the State, "that all the meat on the defendant's plantation was consumed by midsummer, 1859, and that meat was afterwards carried there from the defendant's house," the defendant offered to prove that, "in December, 1858, he had thirty-three hogs killed on said plantation, for the use of the plantation, and that the meat (the quantity of which was shown) was kept on the place." The court rejected this evidence, and the defendant excepted. After the evi-

dence was closed, the defendant again asked the court to compel the State to elect for which one of the slaves named in the indictment it would proceed, and reserved an exception to the refusal of the court to compel such election.

- BAINE & NESMITH, for the defendant.
- M. A. BALDWIN, Attorney-General, contra.

A. J. WALKER, C. J.—The statute under which the indictment was framed, is as follows: "Any master, or other person standing towards the slave in that relation, who inflicts, or allows another to inflict on him, any cruel punishment, or fails to provide him with a sufficiency of healthy food or necessary clothing, or to provide for him properly in sickness or old age, or treats him in any other way with inhumanity, on conviction thereof, must be fined not less than twenty-five, or more than one thousand dollars." Four of the penal omissions mentioned in this statute are charged in one count. The allegations of these omissions are joined conjunctively; for to say of one, that he failed to do either of two or more things, implies a failure in all. Therefore, the statute which authorizes the charging, in the alternative, of offenses of the same character and suject to the same punishment, has no influence upon the propriety of the joinder in this case.—Code, § 3506. But, without the aid of any statute, charges of the different penal acts and failures mentioned in the section above copied may be joined in a single count. They are described in the same clause, and subjected to the same punishment. The statute, in stating several acts of kindred criminality in the disjunctive, and prescribing a punishment for the commission of one or the other of them, is understood to condemn one offense, and to specify different modes of committing it. It has, therefore, been decided, that the joinder of the charge of the respective acts in the same count is rather a charge of the same offense in the various modes of its commission, or in the different grades of it, and that, therefore, the count is not obnoxious to the

objection of duplicity. The accused may be convicted of either of the specified modes of offense.—*Stevens v. Commonwealth*, 6 Metcalf, 241; *Murphy v. State*, 6 Ala. 846; 1 Bishop on Cr. Law, 535; *Mooney v. State*, 8 Ala. 328; *Ben v. State*, 22 Ala. 9; *Ward v. State, ib.* 16; *Swallow v. State, ib.* 20; *State v. Slocum*, 8 Blackford, 315; *Regina v. Bowen*, 1 Car. & Kir. 501; *Iowa v. Abrahams*, 6 Iowa, (Clark,) 117; *Long v. State*, 12 Georgia, 293; *State v. Meyer*, 1 Spears, 305.

The indictment charges the commission of the offense in reference to three slaves designated by name, and divers others to the grand jurors unknown. The perpetration of the different species of offense specified in section 3297, upon any *one* slave, is indictable. That is made clear, alike by the language of that section, and of the next following section, which declares, that it shall " be sufficient to charge that the defendant did inflict on *a* slave any cruel punishment, or that he failed to provide *him* with a sufficiency of healthy food," &c. That two or more distinct offenses cannot be joined in the same count, is a general rule of the law; but there are exceptions to it. One of these exceptions is, that the different offenses which are the result of the same act, and are parts of the same transaction, may be joined in the same count.—1 Archbold's Cr. Pl. 95–96. Practical illustrations of this exception are found in indictments for burglary and larceny after entering the house.—Barbour's Cr. Law, 319 ; Arch. Cr. L. 96. Then, whether or not the indictment in this case is obnoxious to the objection of duplicity, depends upon the question, whether the offenses as to the different slaves were parts of the same transaction, or the result of the same conduct on the part of the defendant. Duplicity is an objection which must affirmatively appear from the indictment. It is not an objection to an indictment, that the offenses it charges may belong to distinct transactions. Does it, then, affirmatively appear in this case, that the distinct specifications of offense as to the different slaves were the result of distinct acts on the part of the accused?

We think it does not. It is conceded, that the distinctness of the causes of offenses might appear from the nature of them. There are offenses which are incapable of a common origin. Such is not the character of the offenses alleged in this case. A planter may, by an order, or act, or omission, common in its effects, withhold from all his slaves a sufficiency of healthy food and necessary clothing, and from his sick and aged slaves a provision suitable to their respective conditions. Where this is the case, a joinder of the offenses, in reference to all the slaves coming within the operation of the common cause, is permissible. No hardship from such a joinder results to the accused ; for his defense, like the charge, centres in a common point. Indeed, he derives an obvious advantage from the joinder; in meeting in a single count the accumulated charge of misconduct in reference to all the slaves affected, rather than incurring the vexation and peril of numerous separate prosecutions.—*State v. Johnson,* 3 Hill's Law (S. C.) R. 1. If it should be disclosed in the progress of the trial, that the offenses as to the different slaves were distinct, the court would, by compelling an election on the part of the State, protect the accused from the injury of being compelled to answer as to diverse transactions under the same count.—*People v. Adams,* 17 Wendell, 475 ; *Regina v. Bleasdale,* 2 Car. & Kir. 765.

We have looked into the books, and find the leading principle upon which we have proceeded supported by several decisions. In *Rex v. Benfield and Saunders,* (2 Burr. 980,) the court sustained a count which charged the singing in the street of songs libellous of the prosecutor, and of his son, and of his daughter. In *Regina v. Giddins and others,* (Car. & Marsh. 634,) the objection of duplicity was overruled, where a single count charged an assault upon George Pritchard and Henry Pritchard, and stealing from George Pritchard two shillings, and from Henry Pritchard one shilling and a hat, on a given day. It is said in 1st Hale's Pleas of the Crown, 531, that if one at the same time steals goods of A, of the value of sixpence, goods of

B, of the value of sixpence, and goods of C, of the value of sixpence, being perchance in one bundle, or upon a table, or in one shop, this is grand larceny, because it is one entire felony. So, in *Thomas'* case, reported in 2d East's Cr. L. 934, a count was sustained, which alleged the uttering and publishing as true twenty-four false forged and counterfeited receipts for money.

In a still later case in England, the accused was charged with stealing coal from the mines of thirty-one different proprietors, which was brought up through a shaft leased by him ; and the indictment was held not to be obnoxious to the objection of duplicity.—*Regina v. Bleasdale*, 2 Car. & Kir. 765. It appeared that the different larcenies had been committed by undermining from the defendant's shaft ; and the court refused to compel the prosecutor to elect, and decided that, so long as the coal was gotten from one shaft, it was one continuous taking, though the working was carried on by different levels and cuttings, and into the lands of different people. The court, however, advised the prosecution to confine its attention to the taking from one owner.

In the case of the *People v. Adams*, (17 Wend. 475,) it was held, that an indictment, which alleged an illegal sale of different kinds of liquors, on a given day, to divers persons, was not bad for duplicity, and that it must be understood as averring only one transaction. The supreme court of Vermont sustained an indictment, which charged that the defendant broke and entered one man's house with intent to steal his goods, and, having so entered, stole another man's goods.—*State v. Brady*, 14 Verm. 353. The decision is put upon the ground, that the burglary and larceny, although to the detriment of different persons, belonged to the same transaction, and might be joined in the same count. So, the supreme court of Rhode Island decided, that a criminal complaint of an assault on two persons was not bad, considering the assault on both the result of the same act.—*Kinney v. State*, 5 Rhode Isl. 385. And in *Commonwealth v. Williams*, (Thacher's Cr. Cas. 84,) it was

held, that where goods, belonging to different persons, are
stolen at one time and place, the offense may be set forth
in one count. So, also, in this State, it has been decided,
that a count which charged that the defendant adminis-
tered poison to three persons, is not bad for duplicity.
*Ben v. State,* 22 Ala. 9. See, also, *Shaw v. State,* 18 Ala.
547 ; *Rasmek v. Commonwealth,* 2 Vir. Cas. 356. See, also,
*Com. v. Tuck,* 20 Pick. 356.

We think the joinder in this case is authorized by the
principle to be extracted from the cases above collected,
and we decline to sustain the objection for duplicity.

[2.] It is further objected to the indictment, that it
charges an omission of duty, not only as to three named
slaves, (Bob, Anderson, and Mose,) but *as to divers others,
whose names were to the jurors unknown.* In the cases of
*Francois v. State,* (20 Ala. 83,) *Brown v. Mayor of Mobile,*
(23 *ib.* 722,) and *Starr v. State,* (25 *ib.* 38,) it was decided,
that such a mode of averment was not permissible, where
the offense was trading with slaves. The reason given for
those decisions is, that the absence of the master's consent
was an element of the offense, and that the accused could
not be prepared to defend himself, by showing the neces-
sary consent, unless he had information of the name of the
slave with whom the alleged trading was done. In the
first named of those cases, the court say : " If the trading
with a slave was an offense, without any other constituent,
we see no reason why the indictment might not allege his
name as unknown to the jurors, if such was the fact, with-
out in the slightest degree impairing the ability of the ac-
cused to defend." It is apparent, therefore, that those de-
cisions lay down a rule applicable to a particular class of
cases, and not a general principle of criminal pleading.
We think the general rule is, that where the names of third
persons are unknown, and cannot be ascertained, they may
be mentioned in the indictment as persons whose names
are to the grand jurors unknown.—1 Chitty on Pleading,
212 ; 1 Arch. Cr. Pl. 80, 81, 82 ; Wharton's Am. Cr. Law,
§ 251. If it should appear that the name was in fact

known when the indictment was found, or could have been ascertained by the use of due diligence, it seems that the defendant would, upon the trial, be entitled to an acquittal as to the slaves so improperly described as unknown.—See the authorities above. We must, for these reasons, hold the indictment on its face unobjectionable, because the names of some of the slaves are stated as unknown to the jurors.

It appears, however, that on the trial evidence was introduced, charging the accused as to slaves whose names were at that time known, but are not mentioned in the indictment. It is not shown, however, that the names of those slaves were not unknown, and incapable of ascertainment, at the time of the finding of the indictment. If they were unknown, and incapable of ascertainment, when the indictment was found, the defendant would not be entitled to an acquittal in reference to them, because their names were afterwards ascertained, and were known at the time of the trial.—*Com. v. Hendire*, 2 Gray, 503; Whar. Am. Cr. Law, § 251. The bill of exceptions is not inconsistent with the supposition, that the names were not discovered, and not capable of discovery, until after the indictment was found. We can predicate no ruling, in favor of the defendant, upon the isolated fact, that the names were known at the time of the trial. There was no error, under the facts disclosed, in allowing proof as to slaves not named in the indictment.

[3.] We think it results from what we have already said in passing upon the indictment, that the court was not bound to restrict the State to a prosecution for misconduct as to any one or more particular slaves, as it appears that all the slaves were on a single plantation, and the conduct of the accused as to the slaves on the plantation aggregately was the evidence relied on for his conviction. The conduct of the accused as to the feeding of each slave seems to have been a part of one general transaction applicable alike to all. If, however, it had appeared on the trial, that the offenses as to the different slaves were dis-

tinct, it would have been the duty of the court to compel an election on the part of the prosecution, and thus protect the accused against being compelled to answer as to divers transactions under the same count.

[4.] The witness introduced by the State had been an overseer on plantations for sixteen months. When we consider the closeness of observation which overseers on plantations are compelled to make, of the food consumed by slaves, and of their health and capacity to labor, we are constrained to regard one who has pursued that business for sixteen months as competent to give his opinion in reference to the amount of food which is sufficient for a plantation slave.—*City Council of Montgomery v. Gilmer & Taylor*, 33 Ala. 116 ; *Johnson v. State*, 35 Ala. 370 ; *McCreary v. Turk*, 29 Ala. 244.

[5.] It was shown that, about the middle of the summer of 1859, the meat on the defendant's plantation, where the slaves were kept, had been consumed, and that afterwards meat was supplied from defendant's residence. That proof being before the jury, the defendant proposed to show that, in December, 1858, a certain ascertained quantity of pork had been provided on the plantation, and kept on it. This evidence, which was rejected by the court, had, when taken with what had been previously proved, a manifest bearing upon the question of the amount of meat which the negroes had received and consumed ; and the court erred in rejecting it. For this error, the judgment of the court below must be reversed.

We do not think it necessary for us to notice the other numerous questions of evidence presented by the bill of exceptions. Some of them are not very important, and the others may not arise again.

Reversed and remanded.

STONE, J., not sitting.