## C. R. Cock *v.* The State.

. 1. Pendency of Former Indictment. — Appellant and one S. being jointly indicted in P. County for murder, the venue was changed to another county on the application of S. Subsequently, and while the joint indictment was pending and undetermined in such other county, a separate indictment for the same offence was preferred by the grand jury of P. County against the appellant alone. At his trial on this last indictment, the appellant pleaded to the jurisdiction of the District Court of P. County, on the ground that the change of venue awarded on the joint indictment had vested exclusive jurisdiction of the offence in the District Court of the county to which the venue had been changed. But *held*, that it was competent for the grand jury of P. County to prefer the second indictment, and for the District Court of that county to try the appellant thereon, notwithstanding the change of venue and the pendency of the original indictment. See the opinion *in extenso*.

2. Jury Law on Appeal. — Unless the record shows that the court below, after erroneously overruling a good challenge for cause, forced an objectionable juror on the defendant, the ruling on the challenge is immaterial here.

3. Indictment — Name. — If the name of the deceased was not ascertainable by the grand jury when they found the indictment, they properly designated him as "a certain man whose name is to the grand jurors unknown;" and the fact that his name was ascertained and proved at the trial raised no variance and constituted no defence. *Jorasco* v. *The State*, 6 Texas Ct. App. 238, accords with this ruling.

4. DISQUALIFICATION OF JUDGES. — The Constitution provides that no judge "shall sit in any case" wherein he has been of counsel. This disqualification disables a district judge from sitting at the trial of a case in which he has been counsel, but not from receiving an indictment from a grand jury, nor, it seems, from making orders preliminary to the trial of such a case.

5. MURDER — EVIDENCE. — The State having proved by a State's witness that he searched at a certain place and found a human jawbone, the defence asked him why he searched at that place, and he replied that he did so because of information derived from the defendant's confession. The defence proposed, but was not allowed, to prove that the defendant's confession was made in custody and under persuasion, and further proposed to prove the entire statement made by the defendant on the occasion. *Held*, that the proposed proof was properly excluded. Nothing elicited by the State entitled the defendant to prove his own statements.

6. JURY LAW ON APPEAL. — Rulings in organizing a petit jury will not be revised unless they infringed some provision of law or prejudiced the rights of the accused.

APPEAL from the District Court of Panola. Tried below before the Hon. W. STEADMAN, Special Judge.

This appeal is from a conviction of murder in the first degree, and an assessment of the penitentiary for the life of the appellant. The indictment was filed in August, 1878, and charged that the appellant, on July 29, 1875, murdered " a certain man whose name is to the grand jurors unknown." The instruments alleged were a gun, a pistol, and a knife.

On July 31, 1875, the decapitated body of a white man was found near a camping-place in Panola County, close to where a public road to Shreveport, Louisiana, crossed Martin's Creek bridge. On the right arm and through the right breast was a gunshot wound. Neither at the inquest nor before the grand jury was there any proof identifying the corpse. By the time of the trial, however, developments were made denoting that he was one David or Daniel McNally, or McNully, who had been seen, previous to his murder, at the defendant's wagon-yard in Shreveport.

The evidence is quite prolix, and consists largely of local description, in connection with a variety of circumstances

indicative of the complicity of the appellant and Spradley in the perpetration of the crime, but reflecting no light upon the motive or object. This evidence cannot be intelligibly compressed within a reasonable compass, and the opinion indicates the particular matters of fact involved in the rulings.

*Hazlewood & Hull* and *Drury Field*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J. The record discloses that, prior to the presentation of the indictment on which the appellant was tried and convicted, this appellant and one Spradley had been jointly indicted for apparently the same murder for which the indictment in the present case is preferred; that, on the application of Spradley, the venue of the case presented against him and this appellant jointly had been changed from Panola to Shelby County, where the same was pending, undetermined, at the time the indictment in the present case was presented, and upon which the trial was had and the conviction here appealed from was obtained. On the trial below, the defendant interposed the pendency of the prior indictment by a sworn plea to the jurisdiction of the court, setting up the facts as to the joint indictment, the change of venue, and the pendency of the cause in Shelby County. The defendant's plea to the jurisdiction was stricken out by the court, on motion of counsel representing the State in the prosecution. Other objections presented by the defendant relating to the same subject, and including a motion to quash the indictment, were overruled, and the defendant was brought to trial on the second indictment, with the result as stated above.

The ruling of the court sustaining exceptions to the plea to the jurisdiction, and striking it out, was duly saved by bill of exceptions, and is assigned as error. For aught that appears in the record, no action was had with reference to

the first indictment, further than to disregard it entirely as not affording any impediment whatever in the way of the second prosecution. This action of the court presents the most material question in the case. It is urged in behalf of the appellant that because the first indictment was still pending, on change of venue, therefore the jurisdiction of Panola County had been ousted, and that the county of Shelby alone had jurisdiction. This is the substance of the argument. It is further argued that the defendant could not be held on two indictments for the same offence. The naked question here presented is this : Was the fact of the previous indictment, pending by change of venue in another county, a bar or impediment in the way of the court proceeding on the second indictment against the defendant alone, in the District Court of the county having jurisdiction of the prosecution? Our ruling must be considered with reference to the peculiar circumstances surrounding the case as presented by the record, as well as the rules of law which must govern.

In *The State* v. *Gut*, 13 Minn. 342, it was held that it is not a ground for setting aside the indictment that there was another indictment pending in the court against the same person for the same offence at the time the indictment on which he is arraigned (and which he moves to set aside) was found. In *Stuart* v. *The Commonwealth*, 28 Gratt. 950, it was held that "the mere pendency of one indictment is no bar to another, even for the same offence; the accused cannot be tried on both, but the Commonwealth may elect on which to prosecute." It seems from the opinion in Gut's case that the first indictment was, on motion of the attorney-general, set aside, and that after the first indictment had been set aside the defendants were arraigned on the second indictment. The case of Stuart does not fully uphold the extract from the syllabus as set out above. In that case the question seems to have been as to what counts in the same indictment the defendant could be

tried on at a second trial on the same indictment. It does not appear that there were in that case two distinct indictments. Gut's case sustains the decision of this court in *Hardin* v. *The State,* 4 Texas Ct. App. 355, where the first indictment was in fact dismissed, as was also the fact in Gut's case. In Hardin's case, as well as Stuart's, the opinion of the court should be read in connection with the syllabus, in order to a proper understanding of either. Neither Hardin's case, nor Gut's nor Stuart's case, are decisive of the question here to be determined.

Mr. Wharton deduces from quite a number of adjudications some general rules which, we are of opinion, are decisive of the question, as follows: "If two indictments for the same offence be found in the same court, the course is to quash one before the party is put to plead on the other. If in different courts, the defendant may abate the latter by plea that another court has cognizance of the case by a prior bill. It is said, however, that the finding of a bill does not confine the State to that single bill; another may be preferred, and the party put on trial under it, although the first remains undetermined." Am. Cr. Law, sect. 521.

"Where the defendant, at a previous term, had pleaded to another indictment for the same offence, it was held that the fact of a former indictment being still pending was no bar to a trial on the second." Id., sect. 547. The learned author cites, in support of this latter position, cases from Massachusetts, Indiana, and other States.

What has been said in reprehension of the practice of preferring different indictments for different degrees of the same offence has no application to the present case. In the case before us, both indictments appear to be for the same offence and for the same grade; the only perceivable difference being that in the first this appellant and another are jointly indicted for the murder, whilst in the second the defendant is charged alone with its perpetration.

On the authorities cited, therefore, we are of opinion that the pendency of one indictment against the defendant for the same offence, though pending and undetermined when the second indictment was preferred, did not prevent the court from prosecuting the defendant to trial and conviction upon the second indictment. The rights of the parties were not materially affected by the fact that a change of venue had taken place as to the first indictment. The better practice would doubtless be to dispose of the first indictment, by *nolle prosequi* or otherwise, before proceeding to trial on a second indictment for the same offence ; but this seems not to be absolutely required. It is not unreasonable to suppose that in this case some such course would have been pursued but for the fact that the venue of the first case had been changed to another county than that in which the trial was had on the second indictment. The change of venue was procured at the instance of the defendant jointly indicted with this appellant, without the concurrence and over the objections of this appellant. The court properly held that a change of venue by one of the parties indicted carried with it the whole case, including all the parties jointly indicted. *Krebs* v. *The State*, decided at the late Galveston term, *ante*, p. 1.

During the proceedings in the formation of the jury, several of the proffered jurors were challenged for causes which were overruled by the court, and the defendant was compelled by the ruling to resort to peremptory challenges in order to free himself from having them sit on the jury at the trial. It is shown, however, that none of these persons sat upon the jury ; and this fact appearing, and it not being shown that there was any objection to any of the jury who in fact tried the case, the matter is at an end so far as this court is concerned. No matter how many errors have been committed by the judge below in passing upon the challenges for cause, they are wholly unimportant and immaterial so long as the jurors who tried the case were each and

all free from objection. No injury resulted to the rights of the appellant on account of rulings with regard to jurors who did not sit on the trial. *Myers* v. *The State*, 7 Texas Ct. App. 640.

It is complained that the court erred in its charge to the jury on the subject of the name of the deceased, in failing to instruct the jury that if they had a reasonable doubt as to the name of the deceased being unknown, the defendant was entitled to an acquittal on that account.

It appeared in evidence that the name of the deceased was a subject of inquiry at the inquest held over the body of the deceased after its discovery, as well as when the case was being investigated by the grand jury, on which occasions it seems that no definite information was obtainable as to what the name of the deceased really was ; which reasonably accounts for the manner in which he is described in the indictment, though it appears that at the trial his name seems to have been ascertained. It does not appear that the name of the deceased was known, or indeed that his name was capable of ascertainment, when the indictment was found. This being the case, it was proper that the indictment should state that his name was to the grand jurors unknown ; and in describing the injured party, this seems to be all the statute requires. Code Cr. Proc., art. 425. The case of *Cheek* v. *The State*, 38 Ala. 227, is in point, and from the opinion of the court we make the following appropriate extract as decisive of the question. Treating of the names of persons involved in the prosecution other than the defendant, the court say : " If they were unknown and incapable of ascertainment when the indictment was found, the defendant would not be entitled to an acquittal in reference to them because their names were afterwards ascertained, and were known at the time of the trial." Citing *The Commonwealth* v. *Hendrie*, 2 Gray, 503. Wharton's Criminal Law, sect. 251, is to the effect that when third persons cannot be described by name, it is enough

to charge them as a "certain person or persons to the jurors aforesaid unknown;" which is correct if the party is at the time of the indictment unknown, though he became known afterwards. See also *Jorasco* v. *The State*, 6 Texas Ct. App. 238, where the subject is fully discussed, and the conclusion arrived at is in accord with the authorities cited above. That case is against rather than in support of the argument for the appellant, in that it there appeared that the grand jury by the use of proper diligence could have ascertained the name of the injured party, while in the present case it appears that at the time the indictment was found the name of the deceased could not be ascertained.

It is urged in a motion in arrest of judgment that the Hon. A. J. BOOTY, the regular judge of the District Court of Panola County, and who was present and presiding, having been of counsel in the case, was disqualified from receiving the indictment or making any order in the case. A district judge is prohibited by the Constitution from sitting in any case (among other circumstances) " when he shall have been of counsel in the case." What is meant by the phrase " sit in any case," is, we are of opinion, explained by the provisions of the Constitution as to what may be done when a judge is so disqualified.. For instance, the parties may, by consent, appoint a proper person to try the case; or, upon their failing to do so, a competent person may be appointed to try the same in the county where it is pending. Art. 5, sect. 11. Taking these several passages in connection, it would seem that when it is said the judge shall not sit in any case, it is intended that he shall not do what the person chosen or appointed may do,— that is, " try the case." So that, whilst a judge who had been of counsel for either party could not sit in the trial of the case, or make any ruling which would properly arise on the trial, he would not be incompetent to preside in taking incidental orders, as, for instance, an order granting a change of venue, or entering

an order appointing the person agreed upon or appointed to try the case. The disqualification of the judge to try the case would not prevent him from receiving the report of the grand jury for the term, although there be embraced in their report the return of an indictment in which he would not be qualified to sit on the trial. We find no error in overruling the defendant's motion in arrest of judgment.

It is also assigned as error that the court erred in excluding a part of a supposed confession of the defendant while in jail, the State having used a portion of the confession. The matters complained of are set out in two bills of exception, to this affect: A witness for the State, being on cross-examination, said that Cock and Spradley were arrested in Shreveport and brought to Carthage and kept in jail; and the witness being asked by defendant's counsel if the parties who were with him made search in another locality, and for what did they search, he said they did not search in any other locality, and that they were searching there for the head of the man who had been killed at Martin's Creek bridge. Defendant's counsel then asked the witness how it was that the search was made in that particular locality, and the witness said that they searched for the head there because of C. R. Cock's confession. Then counsel for defendant asked the witness to tell if C. R. Cock had said anything else in the same statement, and if yea, to tell all that was said; to which question and answer the State objected, and the court sustained the objection. To this the defendant excepted, and the court then excluded the testimony as to Cock's confession. Then the defendant's counsel proposed to prove by witnesses present that the persons who were making the search with the witness, and the witness himself, were acting in said search from information received from C. R. Cock, the defendant, in a confession made by him after his arrest, and defendant's counsel proposed to prove all the statements made in the confession at the same time by the defendant, by witnesses

then present, and especially, among other facts, that the place to find the head was not all, but a part only of the same confession made by the defendant at the same time, and that the confession was made by persuasion. To all which the State objected, and the court sustained the objection.

These exceptions show but this at most, that the parties who were in search of the head of the murdered man went in a certain direction because of something said by the defendant after his arrest. Not that any confession or part of a confession, or any statement or part of a statement, made by the defendant was admitted in evidence, or offered as evidence by the State ; on the contrary, it is shown that the defendant proposed to prove everything the defendant had said on the subject, basing his right so to do upon the idea that the door had been opened to him for that purpose by the fact that it had been drawn out of one of the State's witnesses, on cross-examination, that parties who went in search of the head in a certain direction did so because of the defendant's statements while in arrest. To state the question concisely is to show that the position contended for by counsel is wholly untenable. If a confession made by the defendant had been offered in evidence against him by the State, such confession could have been used against him to the extent that it was found to be true, by leading to the discovery of facts tending to fasten guilt upon him. Code Cr. Proc., arts. 749, 750 ; *Davis* v. *The State*, at the present term, *ante*, p. 510. This is not the present case, however ; the confession was not admitted nor offered.

It matters not how the parties obtained the clew by which they were induced to go in a given direction in search of the head of the dead man, the facts discovered, after the lapse of several weeks, by the search, were admissible in evidence against the defendant for what the jury might deem them worth as evidence tending to fasten guilt upon him, even though the search resulted in the discovery, not of the

head, but of an under-jaw bone and a gun or pistol ball, and the appearance of each as described by the witnesses. The court did not err in closing the door in the defendant's face when he attempted to get before the jury his own statements concerning the affair in both or either of the ways attempted; that is, by cross-examining the State's witnesses, or by direct testimony from witnesses introduced by himself.

It is shown by bill of exceptions that after the original *venire* of jurors summoned for the trial had been exhausted, and only four jurors had been obtained from the original list, the court verbally ordered the sheriff to summon one hundred men from whom to complete the jury, but did not direct their names to be drawn from the box containing the names of jurors furnished by the jury commissioners, as requested by the defendant, he offering to prove by the clerk of the court that the names of persons furnished by the jury commissioners had not been exhausted; which proceeding was objected to by counsel for the defendant.

It is not attempted to be shown what number of names of persons furnished by the jury commissioners remained in the box. For aught that is shown by the bill of exceptions, the statement may be true that the number of names which had been furnished for the term had not in fact been exhausted, and yet the number remaining may have been so small as not to justify consuming the time of the court with it. Nor is it shown that any legal right of the defendant was prejudiced by the action of the court. Matters of this character being so largely confided to the discretion of the trial court, we would not feel warranted in revising its action unless it is made to appear that some provision of law had been violated, or that some right of the defendant had been denied him by the action of the court. Agreeably to the jury law of 1876, it is provided that, " When from any cause there is a failure to select a jury from those who have been summoned upon the special *venire*, the court

shall order the sheriff to summon any number of persons that it may deem advisable, for the formation of the jury.'' Code Cr. Proc., art. 612. The law authorized the action of the court in the premises.

The remaining errors assigned relate in the main to the charge of the court, and to the sufficiency of the evidence to support the verdict. With regard to the charge of the court, without attempting to discuss *seriatim* the objections raised, let it suffice to say that we deem it an admirably accurate enunciation of the law applicable to every issue arising upon the evidence. The definitions of murder in the first and in the second degree, of express and implied malice, are in substantial conformity to the leading authorities on those subjects. With regard to the evidence, it is not our purpose to do more than say it is sufficient to support the finding of the jury and the judgment of the court. The requirements of the law appear to have been carefully observed in the material portions of the proceedings resulting in the trial and conviction. The trial appears to have been fair and impartial, and the testimony leads to the conclusion that the defendant is unmistakably identified as one of the perpetrators of a foul and cruel butchery and murder. Under these circumstances we would be derelict in the performance of duty to do otherwise than affirm the judgment of the District Court, and it is so ordered.

*Affirmed.*