## D. L. Yantis v. The State.

### No. 1469. Decided February 14, 1912.

### Rehearing Denied March 13, 1912.

**1.—Receiving Stolen Property—Sufficiency of the Evidence.**

Where, upon trial of receiving stolen property, the evidence sustained the conviction, there was no error.

**2.—Same—Evidence—Bill of Exceptions.**

In the absence of a bill of exceptions, the court's ruling on the admission of testimony can not be considered on appeal.

**3.—Same—Charge of Court—Recent Possession—Explanation.**

Where, upon trial of receiving stolen property, the court's charge clearly, aptly, and appropriately presented the question of the possession of property recently stolen according to approved precedent, there was no error. Following Wheeler v. State, 34 Texas Crim. Rep., 353, and other cases.

**4.—Same—Charge of Court—Unknown Party—Grand Jury.**

Where, upon trial of receiving stolen property, it was clearly established by circumstantial evidence that the name of the person from whom defendant received the alleged stolen property was unknown to the grand jury at the time it preferred the indictment, and could not have been known by the grand jury by any reasonable diligence, and that there was ample evidence before the trial jury to authorize the court to submit this question, there was no reversible error; the court's charge being correct in other respects.

Appeal from the District Court of Van Zandt. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of receiving and concealing stolen property; penalty, a fine of $50 and sixty days confinement in the county jail.

The opinion states the case.

*Lively & Stanford* and *T. R. Yantis* and *J. A. Germany* and *Reese & Hubbard* and *Wynne & Wynne,* for appellant.—On the question of the court's charge on recent possession: Arrington v. State, 62 Texas Crim. Rep., 357, 137 S. W. Rep., 669.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—On March 24, 1911, the appellant was indicted by the grand jury of Van Zandt County in two counts, the first charging burglary and the second, receiving and concealing stolen property. Evidence was introduced and the court charged on both counts. The jury found him guilty under the second and fixed his penalty at a $50 fine and sixty days in jail.

There are no bills of exception whatever in the record. The questions raised are on motion for new trial. By this it is complained that the verdict of the jury is contrary to the law and the evidence. We have carefully gone over the evidence and in our opinion it is amply sufficient to sustain the verdict.

Another ground is that the court erred in admitting the testimony of the witness Tanner. This is nowhere shown by a bill of exceptions, which is the only way the question can be raised for decision.

Another ground is that the court did not charge explaining the effect of the possession of recently stolen property. The uncontradicted proof shows that on the night of January 29, 1911, the storehouse of Dr. Smith was burglarized and seven watches, some watch fobs and rings were then stolen from him. On March 10, 1911, appellant was found in possession in the city of Dallas, Dallas County, Texas, of five of these watches, some watch fobs, which in a general way suited the description of those stolen and a ring which also suited the general description of some of those stolen. The five watches, however, were clearly and unquestionably identified as five of the seven stolen watches. Appellant had just pawned one of the watches to a pawn broker in Dallas and a few minutes later was attempting to pawn or sell another one 'of them to another pawn broker. A detective, seeing and hearing this latter attempt to pawn, asked appellant if he was the owner of the watch. He replied he was. He was then asked if he had any more watches. He said no. The detective then searched him and found three others of the stolen watches on his person. He also found some watch fobs and a ring on his person and the pawn broker's ticket of the watch he had just a few minutes before pawned—this making five of the stolen watches. He was then asked by the witness where he got the watches and he said somebody from some place in Oklahoma had sent the watches by express to him at Dallas, Texas, to be disposed of by him. The witness could remember neither the name of the place nor the man's name whom appellant stated had sent them to him. On this point the court charged the jury as follows: "If you find that the watches were received by defendant, but that they were received by express in Dallas, Dallas County, Texas, or in any other place except in Van Zandt County, Texas, or if you have a reasonable doubt as to whether the defendant received the watches, if any, in Van Zandt County, Texas, you will acquit the defendant of the offense of receiving and concealing stolen property, as charged in the second count." This clearly, aptly and appropriately presented the question of the possession of recently stolen property as has many times been held by this court. And presented it in a more favorable way for appellant then in the form of the charge laid down by this court in Wheeler v. State, 34 Texas Crim. Rep., 350; Hinsley v. State, 60 Texas Crim. Rep., 565; Presley v. State, 60 Texas Crim. Rep., 102; Roberts v. State, 60 Texas Crim. Rep., 20; Riding v. State, 40 Texas Crim. Rep., 452; Hays v. State, 36 Texas Crim. Rep., 533; Franks v. State, 36 Texas Crim. Rep., 149; Matthews v. State, 32 Texas Crim. Rep., 355.

The only other complaint necessary to notice is to the charge of the court, appellant claiming that it was error for the court to charge that before they could convict the appellant upon the second count

of the indictment, that he did "in the county of Van Zandt and State of Texas receive the five watches described in the indictment from some party unknown to the grand jury, knowing them to have been stolen," for the reason, appellant claims, that there was no proof shown by the record that the party from whom the defendant received the property was unknown to the grand jury and there was no proof showing that the grand jury ever investigated or attempted to find out from whom he received the said property and that the said charge of the court is without evidence to support it and is hurtful to him.

The uncontradicted proof shows that on the night of January 29, 1911, as stated above, the storehouse of Dr. Smith was burglarized in the town of Canton, Van Zandt County, Texas, and that then seven watches, some watch fobs and rings were stolen from him out of his store; that the appellant was a boy, his age not given, presumably more than sixteen years of age, living in the same town and was about or in the store with others on the Sunday evening the night of which the burglary occurred and was also about the town with others on that day. The testimony further reasonably shows that the appellant was in his parents' house, slept in the bed where he usually slept during the whole of that night, and perhaps upon the proof on the charge of burglary, the jury believed his plea and evidence of alibi, and did not find him guilty of burglary on that account. On the night of March 9, 1911, about midnight, appellant was met five miles from home, going towards Wills Point, a railroad point. He was walking. The witness who met him was riding horseback and recognized and hailed him. He at first made no reply and did not do so until this witness had hailed him the third time and turned his horse around in the road so as to, in effect, call for a response by appellant to his hail. Thereupon the witness asked him where he was going that time of night. He stated he was going to Wills Point to catch an early train to Dallas. The witness then asked him what he was going to Dallas for. He said he was going to get some "booze." When he was asked to then give him, the witness, some "booze" he replied he had none, but would bring him back some. The appellant then stated to the witness not to tell anyone where he was going, because he would get back before he was missed. It was also shown that he had left his parents' house that night without their knowledge. They did not know that he had left that night and that he did not sleep in his room until some time the next day. When they heard he was gone they supposed he had merely gone a few miles in the country to stay with an uncle, a boy or young man about his age; they did not know he had gone to Dallas until later, when informed of his arrest there. On the morning of March 10, the morning after the witness met him at midnight going towards Wills Point, he is shown to have pawned to one pawn broker one of the stolen watches. Within a few minutes after-

wards he was trying to pawn another one of the watches to another pawn broker when he was seen and heard by the detective and what occurred between him and the detective is stated above and is ûnncessary to here restate. It was further shown by the pawn broker, Goldstein, to whom he pawned one of the watches, that he was asked by that pawn broker if the watch belonged to him and he stated that it did. He was then asked his name and stated that it was John Baker, and in making the contract pawning the watch, he signed a written contract, signing his name John Baker. The indictment was found and filed by the grand jury on March 24, 1911, and on the back of it, it is shown that it is found upon the testimony of some twelve witnesses, naming them. Among them was Dr. Smith, the owner of the stolen property, his clerks, other witnesses, who are shown to have seen and identified the appellant on the evening of the day the burglary and theft occurred, the said witness Tanner, the detective, who found him in possession of four of the watches and the pawn broker's ticket and who immediately got the pawned watch from the pawn broker, Abe Goldstein, and other witnesses. The record shows that all of these witnesses testified on the trial. The only explanation appellant made to anyone, from whom or where he got possession of the stolen property was to the witness Tanner, the detective, above detailed and of the testimony of the witness Goldstein, the pawn broker, to whom he pawned one of the watches, also given above.

The record shows that the trial of appellant occurred on April 11, 1911, eighteen days after the indictment was found. The record also shows this: "J. H. Human, sworn, testified for the State: I am foreman of the present grand jury, and was foreman at the beginning of this term when the bill of indictment was returned against defendant. Q. Mr. Human, I will ask you, in the indictment it is alleged that the defendant received some property, alleging the value of it here, from persons to the grand jury unknown; will ask you whether or not you made diligent investigations or searches as to the party, from any party from whom this property might have been received? (The objection to this was by the court sustained for the present.)"

It is held by all the authorities that in an indictment under article 1349, Penal Code (new), it is necessary to charge the name of the person from whom the property is received, if it is known to the grand jury, but that when unknown, or when alleged in the indictment to be unknown to the grand jury, that the indictment is perfectly good. Article 456, Code Criminal Procedure (new) provides: "In alleging the name of the defendant, or of any other person necessary to be stated in the indictment, it shall be sufficient to state one or more of the initials of the Christian name and the surname. . . . When the name of the person is unknown to the grand jury, that fact shall be stated . . ."

The first time the question, it seems, ever arose in this court as to what evidence, if any, was necessary to be introduced on the trial of a case to sustain the allegation in an indictment that the name of the necessary person is to the grand jurors unknown was in the case of Jorasco v. State, 6 Texas Crim. App., 238. We will here quote in full what the court said thereabouts in said case: "With regard to the third objection raised to the indictment, the language used is, that the defendant 'did, then and there, unlawfully and fraudulently take from the possession of some person to the grand jurors unknown.' That such an allegation is sufficient, where the name of the injured party is unknown, has been repeatedly held in our State, and is a rule well established by common law and elementary authorities. Elmore v. The State, 44 Texas, 102; The State v. Haws, 41 Texas, 161; Culberson v. The State, 2 Texas Crim. App., 324; Williams v. The State, 3 Texas Crim. App., 123, and authorities there cited; Taylor v. The State, 5 Texas Crim. App., 1. The indictment is good, and the court did not err in overruling the motion to quash.

"But, whilst the indictment itself is good, it is most earnestly contended that the evidence not only does not sustain the allegation of ownership, but is fatally variant from it; in other words, that the name of the owner of the stolen animal was not unknown, but was known to the witnesses upon whose testimony the indictment must have been found, and upon whose testimony the conviction was had, and could have been known to the grand jury by the use of ordinary diligence. We know of no adjudicated case in this State wherein this question was raised.

"Mr. Greenleaf, in his celebrated work on Evidence, states the rule thus: 'As it is required in indictments that the names of the persons injured, and of all others whose existence is legally essential to the charge, be set forth, if known, it is of course material that they be precisely proved as laid. Thus, the name of the legal owner, general or special, of the goods stolen, or intended to be stolen, must be alleged and proved. And·if the person be described as one whose name is to the jurors unknown, and if he proved that he was known the variance is fatal and the prisoner will be acquitted. But this averment will be supported by proof that the name of the person could not be ascertained by any reasonable diligence.' 3 Greenl. on Ev., sec. 22.

"Mr. Bishop, in his standard work on Criminal Procedure, declares the law as follows: 'In these cases, suppose it turns out on the evidence that the grand jury were wilfully ignorant, and might have known the name if they had chosen; then, the reason on which this form of the allegation is allowed, failing, the allegation will be held on the trial to be insufficient, or to be insufficiently sustained by the proofs adduced. As observed in an English case, 'the want of description is only excused when the name can not be known.' In

other words, since the doctrine which allows this form of the allegation rests on necessity, it can be sustained no further than its foundation extends. If the grand jury could readily inform itself of the name, but would not, there is no higher reason for omitting the usual allegation than if it knew the name and chose not to allege it.' 1 Bishop's Cr. Proc. (2d ed.), sec. 549.

"Again, he says: 'If the indictment alleges the name of the person as unknown, and on the trial the name is disclosed in the evidence, this does not work a variance, unless it is also shown that the grand jury knew the name.' Id., sec. 551. 'When, in these cases, it is usually necessary to mention the name of the third person, and the pleader excuses himself by alleging that the name is unknown, the averment must be proved to the jury, the same in the latter circumstances as in the former. The books do not much enlighten us concerning the presumptions of evidence here; but, on principle, the matter seems to be somewhat as follows: *If, on the trial before the petit jury, the name appears to be unknown, then the inference is that it was equally unknown to the grand jury.* On the other hand, if the name is disclosed, the jury will be justified in doubting whether it was unknown to the grand jury, unless something appears in the course of the evidence to remove the doubt and satisfy their minds. . . . We should probably err, however, if we were to assume that, in the ordinary circumstances of a trial, without reference to special facts, the jury would be justified in finding a verdict upon a count alleging the name to be unknown, wherever there was a mere absence of evidence respecting the name. In other words, this averment must, as already stated, be sustained by the proof the same as the other averments.' Id., sec. 552.

"There are numerous English decisions cited by both Mr. Greenleaf and Mr. Bishop in support of this doctrine; and the same rule is laid down in 1 Chitty's Cr. Law, 213. The leading American cases upon the subject appear to be: Cheek v. The State, 38 Ala., 227; Cameron v. The State, 13 Ark., 712; Reed v. The State, 16 Ark., 499; Blodget v. The State, 3 Ind., 403. Mr. Wharton enunciates the same doctrine in his work on American Criminal Law (vol. 1, 6th ed., sec. 251).

"In the case at bar, the evidence shows that the gelding stolen was the property of one James Story. This fact seems to have been known to the witnesses Nance, Dimmick and Jackman, three of the four witnesses who testified on the trial, and must also have been known to Blocker, the party to whom the horse had been sold by Nance, and who, with Nance, gave up and surrendered the horse to Jackman, as the property of and belonging to Story. The indictment must have been found upon the testimony of some, if not all, of these witnesses; and if so, the grand jury could have found out the name of the owner by simply asking it. Under such circumstances, they should have sought and obtained the information. On

the trial, it was not attempted to explain or account for their failure to do so.

"The evidence not only fails to establish the allegation of ownership as laid in the indictment, but directly contradicts it; and that, too, in such a manner as forces upon us the conviction that the apparent contradiction could have easily been avoided by the exercise of ordinary diligence. We can scarcely presume that a grand jury, investigating a case of theft of animals, would neglect so important a question as the name of the party from whom the animal was stolen, and to whom it belonged. If they had asked either of the three witnesses above named as having been examined upon the trial, or Blocker, the party who gave up the horse as being the property of Story, any one of them could have given such information, to say the least of it, as would have led to the discovery of the name of the true owner.

"Because the evidence does not sustain the indictment, the judgment is reversed and the cause remanded for a new trial."

All of the other cases on that subject decided by this court since then is founded on the decision in the said Jorasco case. From all the cases we think that it is well established that this question is generally if not always raised and passed upon on the motion for new trial and that the rule is as announced by this court in Langham v. State, 26 Texas Crim. App., 533: "It is a well settled rule that when the grand jury could have ascertained the name of the owner of stolen property by the use of reasonable diligence, it is their duty to do so, and failing in this duty, a new trial should be granted.' (Atkinson v. The State, 19 Texas Crim. App., 462, citing 18 Texas Crim. App., 456, 13 Texas Crim. App., 514, 6 Texas Crim. App., 238.)"

This court also in the case of Cock v. State, 8 Texas Crim. App., 659, said:

"It is complained that the court erred in its charge to the jury on the subject of the name of the deceased, in failing to instruct the jury that if they had a reasonable doubt as to the name of the deceased being unknown, the defendant was entitled to an acquittal on that account.

"It appeared in evidence that the name of the deceased was a subject of inquiry at the inquest held over the body of the deceased after its discovery, as well as when the case was being investigated by the grand jury, on which occasions it seems that no definite information was obtainable as to what the name of the deceased really was; which reasonably accounts for the manner in which he is described in the indictment, though it appears that at the trial his name seems to have been ascertained. It does not appear that the name of the deceased was known, or indeed that his name was capable of ascertainment, when the indictment was found. This being the case, it was proper that the indictment should state that his name was

to the grand jurors unknown; and in describing the injured party, this seems to be all the statute requires. Code Crim. Proc., art. 425. The case of Cheek v. The State, 38 Ala., 227, is in point, and from the opinion of the court we make the following appropriate extract as decisive of the question. Treating of the names of persons involved in the prosecution other than the defendant, the court say: 'If they were unknown and incapable of ascertainment when the indictment was found, the defendant would not be entitled to an acquittal in reference to them because their names were afterwards ascertained, and were known at the time of the trial.' Citing The Commonwealth v. Hendrie, 2 Gray, 503. Wharton's Criminal Law, sec. 251, is to the effect that when third persons can not be described by name, it is enough to charge them as a 'certain person or persons to the jurors aforesaid unknown,' which is correct if the party is at the time of the indictment unknown, though he became known afterwards. See also Jorasco v. The State, 6 Texas Crim. App., 238, where the subject is fully discussed, and the conclusion arrived at is in accord with the authorities cited above. That case is against rather than in support of the argument for the appellant, in that it there appeared that the grand jury by the use of proper diligence could have ascertained the name of the injured party, while in the present case it appears that at the time the indictment was found the name of the deceased could not be ascertained."

In Atkinson v. State, 19 Texas Crim. App., 462, after stating what is copied above, in Langham v. State, 26 Texas Crim. App., 538, Judge Hurt, speaking for the court, said: "In this case, though the means were quite accessible, there was not the slightest effort made by the grand jury to discover the owner, and hence, *this being developed on the trial*, a new trial should have been granted." All the cases, as we understand, in effect, so decide. We cite in addition to the above some of them. Puryear v. State, 28 Texas Crim. App., 73; Kimbrough v. State, 28 Texas Crim. App., 367; Shockley v. State, 38 Texas Crim. Rep., 458.

It is the universal rule that any fact necessary to be established in a case can be established as well by circumstantial as by direct testimony.

Upon a thorough going over and consideration of the testimony of this case, we think it is clearly established by circumstantial evidence that the name of the person from whom appellant received the stolen property was unknown to the grand jury at the time it preferred the indictment and that the evidence in no way discloses, even on the trial, that the name of the person from whom appellant received the stolen property was then known, or could have been known by any reasonable diligence by the grand jury, and that there was ample evidence before the jury for the court to have submitted the question to the jury for its finding as it did.

The court correctly, in every way, charged the jury on the neces-

sary elements of the offense of receiving and concealing stolen property. The appellant in no way complains of the charge on that account. In addition, the court charged, as quoted above, that if the watches were received by appellant, but received by express in Dallas, Dallas County, Texas, or in any other place, except in Van Zandt County, Texas, or if they had a reasonable doubt thereof, to acquit the appellant of that offense. The jury, on ample evidence, clearly found against him on that issue. In addition, the court gave a correct charge on circumstantial evidence which applied not only to the whole case, but to this particular feature of the case under discussion now. There is no complaint of the charge of the court on circumstantial evidence.

In submitting the case to the jury on this count of the indictment, he charged: "Now, if you believe from the evidence, beyond a reasonable doubt, that the defendant, in the county of Van Zandt and State of Texas, at any time between the 29th day of January, 1911, and the 24th day of March, 1911, the date of the presentment of the indictment, received and concealed five watches, as charged in the second count, *from someone to the grand jurors unknown,* and that the defendant knew that the said watches were acquired by theft," and they were stolen from C. P. Smith, the alleged owner, then they would find him guilty · as charged in the second count; "and unless you so find and believe, you must acquit the defendant of the offense charged in the second count."

In addition to this, the court correctly charged on reasonable doubt the presumption of innocence, and the jury were the exclusive judges of the facts proven, etc. And still, in addition to this, in another separate paragraph, ". . . Or if you have a reasonable doubt of his guilt, you will simply say not guilty."

The judgment will be affirmed.

*Affirmed.*

[Rehearing denied March 13, 1912.—Reporter.]