## J. B. Steele v. The State.

No. 5693.   Decided March 3, 1920.

Rehearing granted June 25, 1920.

1.—Placing Poison in Water With Intent to Injure and Kill—Evidence—Strychnine—Identity of Receptacle.

Upon trial of murder there was no error in admitting testimony of the chemist who analyzed the substance found in the alleged poisoned water, which was contained in a certain bottle on his desk and which was sufficiently identified as that containing the powder mixed in the water to kill the injured party.

2.—Same—Husband and Wife—Acts and Declarations of Wife.

Where upon trial of placing poison in water with intent to injure and kill, the evidence developed that defendant's wife and defendant acted together in the alleged commission of the crime, there was no error in admitting testimony as to the acts and declarations of the said wife, all of which were out of. his presence and hearing.

3.—Same—Rule Stated—Husband and Wife—Conspiracy.

A husband and wife can conspire together to commit an offense so as that the acts and declarations of either spouse, not on trial, may be admissible against the other who is on trial. Following Cox v. State, 8 Texas Crim. App., 256, and other cases.

4.—Same—Conspiracy—Circumstantial Evidence—Co-conspirators.

A conspiracy may be shown by circumstantial evidence, as may any part, as well as the whole, of a criminal enterprise  Following Little v. State, 31 Texas Crim. Rep., 493, and other cases; and the acts and declarations of co-conspirators in pursuance of a common design, though made in the absence of the one on trial, are admissible in evidence against him, if made pending the conspiracy.

5.—Same—Conspiracy—Evidence—Aliunde—Practice in District Court.

It is not necessary that a conspiracy be established *aliunde*, before the acts and declarations of the co-conspirators, made in the absence of the accused become admissible in evidence, but the trial court must affirmatively charge the jury that they must not consider, as against the accused on trial. the acts and declarations of the alleged co-conspirator, unless it be

shown beyond a reasonable doubt that there was in fact a conspiracy or an acting together of said parties in such criminal enterprise. Following Arnold v. State, 9 Texas Crim. App., 435, and other cases, and where the court complied with this rule, there was no reversible error.

**6.—Same—Charge of Court—Weight of Evidence.**

The charge of the court, which instructed the jury that if any other person than defendant mixed and mingled the noxious portion, was not a charge on the weight of the evidence under the facts of the instant case.

**7.—Same—Requested Charge—Practice on Appeal.**

Where defendant requested a charge to the effect that unless the jury believed beyond a reasonable doubt that the white substance found in the water was strychnine, the defendant should be acquitted, and the court's main charge covered this phase of the case completely, there was no error in refusing the requested charge.

**8 —Same—Conspiracy—Charge of Court—Requested Charge.**

Where upon trial of mixing a poisonous substance with water to injure another, the evidence raised the issue of conspiracy as to defendant and his wife, and the court gave a proper charge on the law of conspiracy, there was no error in refusing the requested charge which did not announce the correct rule of law.

**9.—Same—Requested Charge—Threats by Co-conspirators.**

Where upon trial of mixing poison with water to injure another, the evidence showed a conspiracy between defendant and his wife to commit this offense, and also showed threats of the wife against the party named in the indictment, all of which was material, the court correctly refused a requested charge not to consider any of the alleged threats of the wife.

**10.—Same—Requested Charges—Knowledge by Injured Party Not Necessary.**

There was no error in refusing a requested charge that the jury must believe that the alleged injured party did not know of the mixing of the poison with the water.

**11.—Same—Newly Discovered Evidence—Attorney and Client—Affidavits.**

Where the supporting affidavits to the motion for new trial, on account of newly discovered evidence, were sworn to before one of defendant's attorneys, they cannot be considered on appeal.

**12.—Same—Rehearing—Continuance—Practice on Appeal.**

Where it appeared, on appeal from a conviction of placing poison in water with intent to injure and kill the person named in the indictment, that the trial court overruled an application for continuance on account of the absence of defendant's wife, and there is no question in the mind of this court that her testimony was of a material character and that if she had testified the result might have been different, the judgment is reversed and the cause remanded.

Appeal from the District Court of Cass. Tried below before the Honorable H. F. O'Neal.

Appeal from a conviction of mixing poison in water to injure and kill another; penalty, four years imprisonment in the penitentiary.

*Bartlett & Patman* and *Cunningham, McMahon & Lipscomb,* for appellant.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of conspiracy: Arensman v. State, 79 Texas Crim. Rep., 551; Eggleston v. State, 59 id., 551; Gracy v. State, 57 id., 70; Smith v. State, 46 id., 276; Smith v. State, 48 id., 240.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Cass County, of placing poison in water, with intent to injure and kill J. M. McCormick, and his punishment fixed at four years confinement in the penitentiary.

McCormick was the station-agent at the little town of Avinger, a station on the M., K. & T. Railway, not very far from Jefferson. Appellant, J. B. Steele, was helper at said station, and his wife, Mrs. Steele, was working in a railroad office at Jefferson. There seems to have been in the breast of Mrs. Steele, a desire to be a station master herself, and to hold down the station at Avinger, the salary of which was something more than $100 per month.

Because of various matters, Mr. McCormick became dissatisfied with appellant's work, and notified him that his services would be dispensed with, at which appellant became angry, and refused to quit his job, claiming that he had not been hired by McCormick, and that the latter had no right to discharge him. Appellant's feeling seems to have become very bitter, and to have been shared by his wife. Various threats of both parties appear in the record, and it was the theory of the State that in the commission of this offense, the husband and wife acted together, the wife procuring the poison and furnishing it to the husband, who placed it in the water at the station of Avinger. It is claimed that the poison was placed in the water in the station on Sunday, the 30th of September, 1917. A witness for the State drank a small quantity of said water on Monday morning following, and perceiving its bitter taste, threw the remainder of that which he had taken from the cooler, away, and called Mr. McCormick's attention to the facts. An examination of the cooler disclosed a quantity of white powder floating on the ice on top of the water, and some of this powder was sent in a bottle by Dr. J. W. Peebles, to a chemist in Dallas, by whom it was analyzed and pronounced strychnine. The witness who took one swallow of the water described his feeling resulting from taking the same. This is a sufficient statement of the facts.

Appellant was tried at the September term, 1917, of said court, and then made his first application for a continuance, because of the absence of his wife and one Sims, said application being overruled. We might content ourselves with observing that no bill of exception was reserved by appellant to this action of the trial court. We have always held it to be necessary, in order to procure a review of such

action by this Court, that appellant take his bill of exceptions to the overruling of his application for continuance. Merely raising the question in a motion for a new trial, is not sufficient. Trevino v. State, 38 Texas, Crim. Rep., 64; Green v. State, 49 Texas Crim. Rep., 647; Branch's Ann. Penal Code, Sec. 304, and authorities.

It further appears that this case was tried at a former term of said court, and that at said time the wife of appellant was present, and notwithstanding the State used the same evidence as the application for continuance contended would be relied on in the instant trial, the wife was not then placed on the witness stand, or used as a witness.

We further observe, as to her alleged inability to attend court at the instant trial, that it appears that she underwent an operation in Dallas for female troubles in June, 1919, approximately three months before the date of this trial, and that when this case was called in September, 1919, she was living in Ft. Worth, and had been going back and forth in an automobile from Ft. Worth to Dallas, a distance of some thirty miles, for treatment. Nothing in the action of the trial court in overruling said application, presents any tenable ground for our review.

By proper bills of exception, appellant complains of the admission of the testimony of N. C. Hamner, the chemist who analyzed the substance found in the alleged poisoned water. Mr. Hamner lived in Dallas, and stated that on the morning of October 2, 1917, he found on his desk a bottle, whose content was analyzed by him and found to be strychnine. Appellant's objections were based on the lack of identification of the said bottle, and the failure to show proper custody of same from the time that the alleged poisonous substance was placed therein, until the same reached the witness Hamner.

Dr. Peebles testified that he removed some of the powder from the alleged poisoned water, placed the same in a bottle, sealed it up, and mailed it by registered mail to Dallas, to Dr. Webb, Chief Surgeon of the M., K. & T. Railway; that said bottle was sealed by pasting paper across the top; that it was sent on September 30, 1917. This witness also identified the bottle testified about by witness Hammer as the same one sent by him to Dr. Webb, and containing the substance taken from the water cooler. The witness Hamner testified that when he found the bottle on his desk on October 2, he made some inquiry, and ascertained that the bottle had come from the office of Doctors Webb & Knott, who were surgeons for the M., K. & T. Railroad; that when he first saw the bottle, it was sealed up, by having paper placed over the top; that after making a chemical analysis of the contents of the bottle, he gave same to the district attorney. His identification of the bottle which he found on his desk, and in which he found strychnine, was positive.

We think this sufficient to take the question of the identity of the bottle and its contents, to the jury. The case was one of circumstantial evidence, and the court instructed the jury fully as to the law of this

character of evidence. No exceptions seem to have been taken to that part of the court's charge, and no special instruction was asked relative to the identity of said bottle or its contents.

Appellant's bills of exception Nos. 2 to 8 inclusive, relate to testimony as to the acts and declarations of the wife of appellant, most of which were out of his presence and hearing. The matter so complained of may be briefly stated: The witness Stebler testified that he was a druggist, and sold Mrs. Steele certain strychnine in the latter part of September, 1917—some time between the 25th and 30th of said month. Appellant's objection to this appears in his bill No. 2. Mrs. Howell testified that Mrs. Steele had strychnine a short time before the alleged poison was found in the water at Avinger, and that said Mrs. Steele told her, witness, that appellant rang her up and told her to buy it and send it to him to kill some rats; further, that Mrs. Steele told her that McCormick had not treated appellant right; that he would not put appellant to work, and that she would see that she had revenge out of McCormick, if it took her life-time to get it; further, that on the morning after the alleged poisonous substance was found in the water, witness went to appellant's room to call said wife, not knowing that appellant was there; that the room door was ajar, and hearing nothing, she pushed the door open, and appellant and his wife were standing close together and talking low; that they seemed amazed, and looked scared like to her. This appears in Bill No. 3.

Mr. Howell testified that a short time before the occurrence of the finding of the supposed poison in the water, he heard Mrs. Steele say she had a letter from appellant, asking her to send some strychnine up there; that he wanted to kill some rats. This appears in Bill No. 4.

The witness Myers testified that Mrs. Steele told him that she was going to fix McCormick . . . going to get his job . . . that her husband did not like McCormick, and she did not like him . . that she would get even with him . . . that a few nights before something was put in the water at Avinger, Mrs. Steele went to Avinger in a car . . . that Mrs. Steele told him before that that she wanted the Avinger office; that she wanted it herself, and that she asked witness if he thought her qualified to fill it. This appears in Bill No. 5.

The witness Minnie Davis testified that in September, 1917, Mrs. Steele showed her a box with a white powder in it, which she said was strychnine; that Mrs. Steele went to Avinger a few nights before it was claimed something was found in the water at the station. This appears in Bill No. 6.

The witness Hicks testified that a few nights before it is claimed that the water was poisoned, Mrs. Steele went with him and others in a car from Jefferson to Avinger, but did not come back with them; that she got out of the car at the depot at Avinger. This appears in Bill No. 7.

The witness Harrison stated that a few days prior to the water poisoning occurrence, he saw Mrs. Steele at his hotel at Avinger; that she came to the hotel about sunup one morning, and stayed until the evening or night train; that she talked some about McCormick's books and express matters, and said she rated him a very ungrateful man, and that he was ungrateful in the way he was doing down there. . . . and said something to the effect that she did not think his job would last long. This appears in Bill No. 8.

It is thus shown by said bills of exception that the State introduced evidence of the acts, conduct, and declarations of Mrs. Steele, which, according to the State's theory, showed that she was acting with appellant in procuring and using the alleged poison, with the intent to kill or injure McCormick, and that they were co-conspirators; and upon this ground, the State claimed such evidence was admissible.

Appellant's objections in each bill, appear to be the same, and are to the effect that the testimony calls for acts and conversations of the wife upon issues not made by appellant; the said wife not being a witness, that said testimony was but hearsay, and that no conspiracy between the husband and wife was shown, or attempted to be shown.

Can a husband and wife conspire together to commit an offense so as that the acts and declarations of either spouse, not on trial, may be admissible against the other who is on trial? We think this question must be answered in the affirmative, under the authorities in this State. Cox v. State, 8 Texas Crim. App., 256; Cook v. State, 22 Texas Crim. App., 511; Smith v. State, 45 Texas Crim. Rep., 267; Smith v. State, 48 Texas Crim. Rep., 233.

We are also of opinion that a conspiracy may be shown by circumstantial evidence, as may any part as well as the whole of a criminal enterprise. Thompson v. State, 76 Texas Crim. Rep., 417, 178 S. W. Rep., 1192; Luttrell v. State, 31 Texas Crim. Rep., 493; Cameron v. State, 69 Texas Crim. Rep., 439, 153 S. W. Rep., 867; Yantis v. State, 65 Texas Crim. Rep., 564, 144 S. W. Rep., 947; Bailey v. State, 65 Texas Crim. Rep., 1, 144 S. W. Rep., 996.

The acts and deliberations of a co-conspirator in pursuance of a common design, though made in the absence of the one on trial, are admissible in evidence against him, if made pending the conspiracy. Page 648, Vernon's C. C. P., Sec. 109, et seq.

It is not necessary that a conspiracy be established *aliunde*, before the acts and declarations of the co-conspirators, made in the absence of the accused, become admissible in evidence. If such were the rule, there would be no need for admitting against the accused on trial, such acts and declarations of co-conspirators. The case would be already made out. We are of opinion, however, that there must be testimony other than that of declarations of co-conspirators, which will tend to show an acting together of the parties, and unless there be such evidence other than such declarations, the conspiracy is not made out. We also think that in every case where the issue of con-

87 Tex.—38

spiracy is contested, the trial court must affirmatively charge the jury that they must not consider as against the accused on trial, the acts and declarations of the alleged co-conspirators, unless it be shown beyond a reasonable doubt that there was in fact a conspiracy or an acting together of said parties in such criminal enterprise. Arnold v. State, 9 Texas Crim. App., 435; Dungan v. State, 39 Texas Crim. Rep., 115; Luttrell v. State, 31 Texas Crim. Rep., 493; Serrato v. State, 74 Texas Crim. Rep., 413, 171 S. W. Rep., 1133. The court in the instant case, gave such charge. The testimony showed closely related acts of the wife; that she bought strychnine shortly before the alleged attempted poisoning, and that she said appellant told her to get it; that she went to Avinger just before said occurrence. It further appears in the record that the alleged poison was found in the water on Monday morning, and that on the night before, appellant said to a witness, referring to McCormick, that the son-of-a-bitch would not live more than thirty-six hours. We conclude that the trial court did not err in admitting testimony as to the acts and declarations of the wife, upon the theory that she was a co-conspirator.

Appellant excepted to that paragraph of the court's charge, as follows:

"You are further instructed that if you believe from the evidence or have reasonable doubt that some other person other than J. E. Steele mixed and mingled the noxious potion and substance, if any, with water, then, in that event, you will find the defendant not guilty."

The ground of the exception to the above is that said charge is on the weight of the evidence, and assumed that the white substance found in the water was poison. We cannot agree with appellant. It was not controverted that on the occasion in question there was a white powder placed in the water by some one, and that said powder was bitter to the taste. The only possible ground for this contention of appellant, must be based on the use of the word "noxious" in said charge, and we are unable to find where such word is held to mean poison or poisonous, and we think the criticism of the charge unwarranted. In this connection, we observe that in his special charge No. 2, appellant refers to the substance which was placed in the water, as strychnine.

Appellant also asked that a special charge be given to the effect that unless the jury believe beyond a reasonable doubt that the white substance found in the water was strychnine, appellant should be acquitted. This charge was refused upon the ground that it was covered in the main charge. Referring to the main charge, we see that the court confined the question of the poisonous substance throughout, to whether or not the same was strychnine.

On the question of conspiracy, the trial court charged as follows:

"You are instructed that you cannot consider the acts and declarations of Mrs. J. B. Steele made to Quill Howell, Mrs. Quill Howell, E. W. Stebler, A. R. Myers, Leonard Hicks or Miss Minnie Davis if

any such statement were made for any purpose whatsoever, unless you should first find from the evidence beyond a reasonable doubt that J. B. Steele, the defendant, conspired with Mrs. J. B. Steele to mingle and cause to be mingled with a certain drink, to-wit, water, a certain poison, to-wit, strychnine, with the intent then and there and thereby to injure or kill J. H. McCormick, as alleged in the indictment; and if you should find that said conspiracy was so formed, then the acts and declarations of Mrs. J. B. Steele could be considered by the jury in passing upon the animus and intent and purpose of the defendant in committing the crime, if he did commit it, and for no other purpose.

You are further instructed that before the acts and declarations of Mrs. J. B. Steele can be used as evidence it must be shown beyond a reasonable doubt that a conspiracy existed between Mrs. J. B. Steele indictment, and if there is a reasonable doubt as to the existence of such a conspiracy, the acts and declarations of Mrs. J. B. Steele cannot be considered by you for any purpose.''

To this charge, appellant excepted, and asked the following special charge:

''I charge you, gentlemen of the Jury, that before you can consider any of the testimony of the witnesses A. A. Myers, Quill Howell, Mrs. Quill Howell, Minnie Davis, Leonard Hicks, and E. W. Stebler as to any acts or conversations with the wife of defendant, you must believe from the other evidence (other than such acts of conversations with the wife of the defendant) that she and the defendant had entered into a conspiracy to commit the offense charged in this indictment prior to its consummation, if any there was.''

This the trial court refused, and the matter is presented here upon appellant's contention that such action was erroneous. We think the charge of the court substantially correct, and that this special charge should not have been given. The same seeks to announce an incorrect rule, and one which, if engrafted on the law of conspirators and principals, would practically destroy all power to introduce the acts, as well as the declarations of the parties themselves, as tending to establish their acting together. Jones v. State, 83 Texas Crim. Rep., 12, 214 S. W. Rep., 322; Branch's Crim. Law, Sec. 245, et seq; Middleton v. State, 217 S. W. Rep., 1046.

Appellant sought by special charge to have the jury told that they should not consider any of the alleged threats of Mrs. Steele, as testified to by Mr. Howell. Mrs. Howell, and Mr. Myers. Mrs. Howell testified that Mrs. Steele said she would have revenge out of McCormick, if it took her a lifetime to get it. Mr. Howell testified to no threats. Mr. Myers said that Mrs. Steele told him that she did not like McCormick; that she was going to get even with him; that she was going to fix him; that she was going to get his job. That Mrs. Steele was a conspirator, acting with her husband in an effort to kill Mr. McCormick, or seriously injure him by poisoning him, was a question

for the jury, under the court's instructions, and we think that testimony of her threats, as well as her acts, which shed light on her attitude in the matter, was material, and that the charge was properly refused.

Appellant's special charge No. 2, to the effect that before the jury could convict him they must believe that the alleged injured party, McCormick, did not know of the mixing of the strychnine with the water, was not a correct statement of any issue raised by the evidence in this record.

Appellant sought a new trial, setting up among other grounds, newly discovered evidence, attaching to said motion certain affidavits. Our Assistant Attorney General objects to our consideration of said affidavits, because same were sworn to before one of appellant's attorneys. (See Branch's Ann. Penal Code, Sec. 194); and also objects to our consideration of said ground of newly discovered evidence, because the motion for new trial was not duly sworn to. (See Branch's Ann. Penal Code, Sec. 193). We are compelled to sustain both these objections, and the question of newly discovered evidence must pass out.

We have given this case our careful and patient examination, and find no reversible error. The judgment is accordingly affirmed.

*Affirmed.*

ON REHEARING.

June 25, 1920.

LATTIMORE, JUDGE.—In this case, upon a careful review of the facts and our former opinion, we have concluded that possibly we were in error in holding that the trial court did not err in refusing to grant the application for a continuance, on account of the absence of appellant's wife. There is no question but that her testimony was of an excedingly material character, and that if she had been present and testified, the result might have been different. Almost all of the State's testimony tending to show the commission of this offense by the appellant, is testimony in which the wife is involved in one way or another. Being unwilling that injury should be done, and preferring to hold against possible injustice, we have concluded that we should grant this motion, and it is accordingly done; and the judgment of affirmance is set aside, and the cause is reversed and remanded for a new trial.

*Reversed and remanded.*