BEAUCHAMP, J., did not participate in the disposition made of this case.

On Motion for Rehearing.

GRAVES, Judge.

■ The State's Attorney has filed a motion for a rehearing herein, alleging that we were in error in our holding that the provisions of Art. 728, C.C.P., were violated when the trial court failed to allow Dr. Koepsel to detail the latter portion of a conversation with appellant wherein he said: "I don't know why he did that to me; I don't know why he would do that to me; I had to shoot him" or "I had to shoot."

It is said of Art. 728, C.C.P., that: "This article expands the common law rule. At common law, when a confession or admission is introduced in evidence against a party, such party is entitled to prove the whole of what he said on the subject at the time of making such confession or admission. But this article does not restrict the explanatory act, declaration, conversation, or writing, to the time when the act, declaration, conversation, or writing sought to be explained, occurred, but extends the rule so as to render such acts or statements admissible, if necessary to a full understanding of, or to explain, the acts or statements introduced in evidence by the adverse party, although the same may have transpired at a time so remote as to not be admissible as res gestae." Greene v. State, 17 Tex.App. 395; Rainey v. State, 20 Tex.App. 455; Harrison v. State, 20 Tex.App. 387, 54 Am.Rep. 529; Smith v. State, 46 Tex.Cr.R. 267, 81 S.W. 936, 108 Am.St.Rep. 991." See art. 728, note. 2, Vol. 2, Vernon's Texas C.C.P.; Autry v. State, Tex.Cr.App., 157 S.W.2d 924; Henry v. State, 106 Tex.Cr.R. 198, 291 S.W. 542.

We remain of the opinion that all the conversation had with Dr. Koepsel relative to the transaction inquired about should have been admitted by the court.

The motion will be overruled.

**REEVES v. STATE.**

No. 22290.

Court of Criminal Appeals of Texas.

Dec. 2, 1942.

Rehearing Denied Jan. 6, 1943.

*wrong — 2 yrs. sentence*

Tom H. Kee, of Waco, for appellant.

Spurgeon E. Bell, State's Atty., of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for an aggravated assault, punishment assessed being a fine of one thousand dollars and two years in the county jail.

The indictment contained two counts, the first charging that appellant made an assault upon Evelyn Cox with intent to have carnal knowledge of her, she being under eighteen years of age, and not appellant's wife. The second count charged that appellant did attempt to have carnal knowledge of the said Evelyn Cox. Upon the request of appellant for election the State elected to prosecute under the first count, but the court finally submitted the case to the jury only upon the issue of aggravated assault based upon Subdivision 5, Art. 1147, P.C., which makes an assault aggravated "when committed by an adult male upon the person of a female."

The evidence shows that appellant was a man about forty-five or forty-six years old, and Evelyn Cox was a girl not yet sixteen years of age.

The State's case rests upon the testimony of the girl, her evidence (omitting some

178

immaterial matter) being as follows: "Then he (appellant) said he wanted me to go up in his room and he would show me his papers—you know—that he was an FBI man. And said he wanted to tell me more about this blonde headed woman. And we went up there and he sat down on the bed and I sat in a chair and he asked me to come over to him and I wouldn't do it. I mean he asked me to come over to where he was, and sit down on the bed with him, and I wouldn't do it and he insisted and I still wouldn't. So he talked about the blonde; just the same thing again. And then he asked me to come over again and I still wouldn't, and I told him I was going to leave and he told me that I didn't have anything that he wanted and I got up and went to the door; I was going to go; and he ran over and stood against the door and I told him to let me go and he put his arms around me and pulled me up to him and I pulled away and he asked me to marry him and I told him he was old enough for my father, and he tried to get me to kiss him and I wouldn't do it, and I told him to let me go and he told me to sit down in the chair and he would let me go and I wouldn't do it and I found out he wouldn't let me go until I did and so I sat down on the chair and he was putting on his coat and vest when the officers walked in. It was not agreeable with me for him to put his arms around me and pull me up to him. I had not said anything to him that I thought would even give him that impression. At the time he caught me and pulled me up to him I was scared and embarrassed. * * That was the first time I had ever seen Joe Reeves. I have known him about two months now. That was the first time I had met him, but now I have known him about two months. I had never seen him before. While we were there in the room he didn't make any immoral suggestion to me as to wanting me to do anything or anything like that. I went up there to the room of my own accord."

Appellant did not testify. The evidence further shows that appellant was not an FBI man. Two officers went to the room where appellant had taken the girl. When the officers entered the room the girl was sitting in a chair and appellant was standing between her and the door putting on his vest. One of the officers said the girl appeared to be very frightened.

By bill of exception number one appellant appears to complain because one of his attorneys was engaged in the trial of a case in another court when this case was called, and that he was deprived of the services of counsel who was absent. In approving the bill the court says: no "motion was presented with reference to the above matter." The qualification was not objected to. No error is shown in view of the qualification.

Bill of exception number two presents no error and does not call for discussion.

Bill of exception number three raises a question as to the sufficiency of the evidence, it being a complaint at the refusal of a peremptory instruction of acquittal. The evidence heretofore recited supports the verdict and judgment. While the punishment assessed was severe for an aggravated assault, it was within the province of the jury to assess it, and we are without authority to substitute our judgment for that of the jury upon such question. Notwithstanding appellant's statements to the girl as recited by her, there was doubtless in the jury's mind the thought expressed by the canny Scotchman, "I can'na hear what ye say for thinking of the deeds ye do."

In bill of exception number four appellant complains of an argument of the attorney representing the State. The bill itself recites that no objection to said argument was made at the time of the trial. This nullifies the bill. See Harris v. State, 93 Tex.Cr.R. 544, 249 S.W. 485; Salinas, v. State, 113 Tex.Cr.R. 142, 18 S.W.2d 663; Herms v. State, 129 Tex.Cr.R. 448, 87 S.W. 2d 717; Crowley v. State, 117 Tex.Cr.R. 372, 35 S.W.2d 437. The trial judge did not certify that the argument occurred. He says he listened to all of the arguments and does not remember anything occurring as recited in the bill.

Appellant made application for continuance based upon the absence of a witness. The application is not in the record independently but is set out in full in bill of exception number five. The only diligence to procure said witness is set out in the following language: " * * * that this defendant has used due and sufficient diligence to procure the attendance of said Nick Batellio as a witness in his behalf herein, in this that the defendant had issued a subpoena for said witness and

said subpoena has been returned by the proper authority, unexecuted, with the notation by the officer, in substance, that said witness is temporarily out of McLennan County, visiting with his sister."

In approving the bill complaining of the denial of the continuance the court says it was refused because "same was not good." The court appears to have been right in such ruling. Before one is entitled to a continuance for an absent witness, proper diligence must be shown to procure his attendance. It will be observed that the application here involved does not show when the witness left McLennan County, nor when process was taken out for the witness. So far as the application shows, appellant may have waited until the witness left the county before securing process; whereas, if timely obtained the witness might have been served. Process for the witness and return thereon is not attached to the application for continuance. Appellant apparently attempts to supplement his application by requesting a certiorari to bring up to this court his request for process for said witness, and the process and the return thereon. The bill cannot be thus aided. Copies of the documents mentioned are attached to appellant's request for writ of certiorari, and if they were present and could be considered they would in our judgment leave appellant in a worse plight so far as lack of diligence is concerned than he is without them. As it now stands appellant fails to show diligence; with the documents considered it affirmatively shows lack of diligence. The indictment was returned on March 3, 1942. The case was tried on March 31. The copy of the application for process for the absent witness shows the subpoena was not requested nor issued until March 30, which was the day before the trial. For authorities on failure to show sufficient diligence, see: Toliver v. State, 63 Tex.Cr.R. 563, 140 S. W. 776; Shaffer v. State, 121 Tex.Cr.R. 137, 52 S.W.2d 1054; Carroll v. State, 120 Tex.Cr.R. 541, 46 S.W.2d 1110; Jones v. State, 115 Tex.Cr.R. 60, 29 S.W.2d 791; Flanagan v. State, 142 Tex.Cr.R. 177, 151 S.W.2d 803.

The application for continuance was sworn to before appellant's attorney. This is not permissible. Authorities are numerous that an application for continuance, or affidavit in connection with motions for new trial, should not be sworn to before either attorneys for the accused or for the prosecution. See Smith v. State, 97 Tex.Cr.R. 6, 260 S.W. 602; Melton v. State, 78 Tex.Cr.R. 539, 182 S.W. 289; Hall v. State, 79 Tex.Cr.R. 463, 185 S.W. 574; Scott v. State, 65 Tex.Cr.R. 40, 143 S.W. 610; Maples v. State, 60 Tex.Cr. R. 169, 131 S.W. 567; Kellum v. State, 91 Tex.Cr.R. 664, 240 S.W. 1109; Siebe v. State, 92 Tex.Cr.R. 605, 244 S.W. 1013; Steele v. State, 87 Tex.Cr.R. 588, 223 S.W. 473; Gibbs v. State, 99 Tex.Cr.R. 186, 268 S.W. 736; Sloane v. State, 125 Tex. Cr.R. 169, 66 S.W.2d 699; Rasberry v. State, 129 Tex.Cr.R. 546, 90 S.W.2d 258; Fann v. State, 138 Tex.Cr.R. 580, 137 S. W.2d 1019.

The judgment is affirmed.

### On Motion for Rehearing.

BEAUCHAMP, Judge.

Appellant has filed a vigorous and, we think, unwarranted attack on the original opinion in this case in the form of a motion for rehearing. It is admitted that this court has authority to review the findings of the jury and to set aside their judgment if the punishment be excessive. Calhoun v. State, 85 Tex.Cr.R. 496, 214 S.W. 335; Gipson v. State, Tex.Cr.App., 161 S.W.2d 1088. What is excessive punishment may not be determined by this court on our idea of an appropriate penalty so long as it was one which the jury had the power to assess.

Appellant has presented a number of cases which he considers important and then makes this statement: "After reading the above opinions of former Judges of this Court I challenge this Court to repeat such opinion as heretofore handed down." The only case which we consider in point is Robinson v. State, 25 Tex.App. 111, 7 S.W. 531, which is an opinion by Judge Hurt. The appellant in that case was drunk and raised a fuss with Matilda Jones, a female. Having been ordered off the premises by Matilda's employer, he waylaid the woman, and when she left the premises to go to her home, he called for her to stop and when she refused he seized her sleeve and jerked her nearly down, tearing off the sleeve of her dress. He did not strike the witness nor did he attempt to do so. The jury assessed a penalty of $500 and twelve months in jail. There was a variance between the information and

complaint so that the construction given to it was that only a simple assault was charged. There was no allegation whatsoever that the accused was an adult male person. It was therefore held that the penalty assessed was excessive. Definitely it was, because an aggravated assault was not charged and no such penalty could, under the law, be assessed for a simple assault. Neither would the evidence support an aggravated assault had it been properly lodged against the accused, for it does not disclose that he was an adult male person.

In the case before us, appellant is properly charged with aggravated assault and the evidence supports it. The jury did not exceed the penalty which the legislature said may be assessed under the indictment and under the evidence of the case. There is nothing cruel about the penalty, as that term is used in the Constitution, Vernon's Ann.St.Const. Art. 1, § 13, and we are unable to find support for the contention that this court has power to set aside the jury's decree. It may be that the jury's verdict was a harsh one, but they had the witnesses before them and were in a better position to judge of the facts than this court could be. Logically, the law entrusted them with that duty and responsibility and it is only for this court to say whether or not the evidence will authorize their verdict under the charge.

Appellant's motion for rehearing is overruled.