## ROSCOE TRINKLE v. THE STATE.

No. 5999.   Decided December 1, 1920.

1.—Theft of Automobile Tires—Unknown Ownership—Name of Owner—Grand Jury.

Where, upon trial of theft of automobile tires, the contention of defendant was that the allegation and indictment of unknown ownership was not justified by the facts, and that the grand jury could have known, had it tried to find out, from whom the property was taken, and the evidence upon trial showed that the owner was known, or could have easily been found out by the grand jury, and that the grand jury did not use sufficient diligence to ascertain the name of the owner of the property, held, that the evidence is insufficient to show that said owner was unknown and the judgment of conviction must be reversed and the cause remanded. Following Jorasco v. State, 6 Texas Crim. App., 243, and other cases.

2.—Same—Rule Stated—Unknown Owner.

It is the well settled rule that if the owner is alleged to be unknown and on the trial the evidence shows the name of the owner, the State is required to go further and show that the grand jury did not know the name of the owner and could not, by reasonable diligence, have obtained that information. Following Williamson v. State, 13 Texas Crim. App., 518, and other cases.

3.—Same—Rule Stated—Unknown Owner—Grand Jury.

Where, it appears from the evidence in the trial that the grand jury could have ascertained the name of the owner by inquiring of witnesses who appeared before them, or by the use of proper or reasonable diligence, an allegation that the owner was unknown to the grand jury is not sustained. Following Atkinson v. State, 19 Texas Crim. App., 466, and other cases.

4.—Same—Theory of Defense—Unknown Owner—Insufficiency of Evidence.

Where, upon trial of theft of automobile tires, the evidence in regard to diligence on the part of the grand jury to ascertain the name of the owner was insufficient, and that such name could have been ascertained, by reasonable diligence, and the defendant showed that he purchased the alleged goods from a man whose name he gave at a place he named, etc., the conviction cannot be sustained.

Appeal from the District Court of Smith. Tried below before the Honorable J. R. Warren.

Appeal from a conviction of theft of automobile tires; penalty, two years' imprisonment in the penitentiary.

The opinion states the case.

*F. J. McCord*, and *Stephens & Sanders*, and *Simpson, Lasseter & Gentry*, for appellant.—Cited: Swink v. State, 32 Texas Crim. Rep., 530, and cases cited in opinion.

*Alvin M. Owsley*, Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of theft of twenty-six automobile tires as set out in the second count of the indictment. The first count charges theft from the possession of D. Beck, he being the alleged owner. The second alleges, and under which the conviction occurred, theft from an unknown owner. The third alleges that he received from somebody unknown to the grand jury. There are other counts in the indictment. The court submitted, however, only the second count and fourth count. The jury in their verdict disregarded the fourth and convicted under the second count, which charges theft from an unknown party.

The contention of appellant is that the allegation of unknown ownership was not justified by the facts, and that the grand jury could have known, had it tried to find out, from whom the property was taken. Birdwell, the foreman of the grand jury testified they tried to ascertain from whom defendant received the tires, and that they made diligent inquiry to ascertain from whom appellant received the tires, but were unable to find out. That is the evidence the State put in to justify the allegation of unknown ownership. The facts introduced by the State are to the effect that there were several shipments of auto tires from Dallas to different parties. These tires were sent through the Wells Fargo Express Co., now the American Express Company, to parties at Lufkin, Texas. Some were sent to two or three parties at Tayler, Texas. These shipments occurred on different dates. The State placed the express company in possession of the goods in Dallas, and were so placed by the parties who sold and shipped to those at the other end of the line. This was uncontroverted, although there was objection to some of the testimony that was introduced to prove it. It is not the purpose here to dis-

cuss the alleged errors in the manner of proving the shipments. That they were shipped as indicated through the express company is not a disputed issue; at least it will be so regarded in this opinion. When the express company received and receipted for the goods they became under the law of theft the owner. The tires were placed in possession of the express company to deliver to the consignee. They were never delivered. They were to be transported from Dallas to the respective points of destination set out in the bills of lading and receipts given by the express company for them, and they passed into the possession of the express company. It seems from the testimony that the goods were shipped or were to be so shipped in a car over the Texas Pacific lines from Dallas as far east as a station called Big Sandy. At that point they were to be transferred to the Cotton Belt Railway. The State further proved that in the town of Taylor appellant was seen in possession and assisted in disposing of tires the State sought to identify as those that were placed in the hands of the express company in Dallas. How they got to Tyler, outside of being in the possession of appellant, the State did not prove. It is also in evidence that when these tires reached Big Sandy they were to be transferred through the express office at that point for carriage on the Cotton Belt. This is the State's case.

It is only by inference that the tires ever left Dallas. None of the express messengers or agents on the railway train were introduced. None of the employees of the express company at Big Sandy were introduced. · The agent at Big Sandy was Mr. Beck, the man from whose possession the property is alleged to have been taken in the first count of the indictment. He was not produced at the trial. There was an application for continuance by defendant to have him present, which was overruled by the court, and during the trial that count in the indictment was ignored and not submitted by the court to the jury. If that count had been relied upon, it would have been necessary, of course, to produce Mr. Beck as a witness, but they did not do so, and the record is silent as to whether they undertook to have him present. What he would have sworn, of course, is a matter of conjecture, except as set out in appellant's application for continuance. Now, it would seem to be evident that the grand jury could have had the witnesses before them to show the goods were transported on the lines of the T. & P. Ry. Co. or on the Cotton Belt, or both. They could have shown by waybills and by their record evidence and by messengers or employees on the train who had charge of the goods from Dallas if they went from Dallas or what became of them. The goods were in their possession and under their control. This record is silent as to whether or not they sought to have those express agents and employees of the company before the grand jury. After the express company received the goods they were in the company's possession, under its control and management, making it thereby the owners so far as this prosecution

is concerned. The .grand jury legally knew that, and they were put on notice of it from the evidence in this record. The law with such facts before them placed these goods in the possession of the express company or its agents. The slightest diligence ought to have had those witnesses before the grand jury to testify as to when and where the tires disappeared or were taken. It seems they have a method in the express company of detecting this as testified by witnesses. If a certain amount of goods is shipped from one point to another they are checked up at the starting point and checked up enroute, and the place of shortage, if any, is thus discovered and notation made of it. If these goods were shipped from Dallas to Big Sandy and disappeared enroute, the express agents knew or could have known it; it was their business to know it, and to make a proper record in regard to it. They were not called to testify before the grand jury or before the court and no process issued so far as the record discloses. The State relied alone upon the fact that the express company had receipted for the goods at Dallas to be routed over the T. & P. lines in a certain numbered car. Those goods were taken by somebody from the express company, and the express company's records, books, agents and employees knew or should have known when the theft occurred or about where it occurred. If the agents or employees of the express company in charge of the goods enroute were *particeps criminis* in the taking or disposed of them to somebody, it might be embezzlement on their part, but could not be theft on the part of appellant. Even if it be conceded that appellant received the goods enroute, it would not constitute him the taker, and, therefore, guilty of theft. It is the settled law of Texas that if the evidence on the trial shows that the owner is known and there is no evidence that the grand jury used diligence to ascertain the name of the owner of the property, the evidence is insufficient to show the owner was unknown. Jorasco v. State, 6 Texas Crim. App., 243; Langham v. State, 26 Texas Crim. App., 539; Sharp v. State, 29 Texas Crim. App., 213; Yantis v. State, 65 Texas Crim..Rep., 564, 144 S. W. Rep., 950. It is also well settled that if the owner is alleged to be unknown and on the trial the evidence shows the name of the owner, the State is required to go further and show that the grand jury did not know the name of the owner and could not by reasonable diligence have obtained that information. Jorasco v. State, 6 Texas Crim. App., 243; Williamson v. State, 13 Texas Crim. App., 518; Brewer v. State, 18 Texas Crim. App., 456. Where it appears from the evidence on the trial that the grand jury could have ascertained the name of the owner by inquiry of witnesses who appeared before them, or by the use of proper or reasonable diligence, an allegation that the owner was unknown to the grand jury is not sustained. Same cases already cited; see, also, Atkinson v. State, 19 Texas Crim. App., 466; Kimbrough v. State, 28 Texas Crim. App., 369; Swink v. State, 32 Texas Crim. Rep., 530; Grant v. State, 36

S. W. Rep., 264; Shockley v. State, 38 Texas Crim. Rep., 458, 42 S. W. Rep., 972; McKay v. State, 49 Texas Crim. Rep., 120, 90 S. W. Rep., 653; Hellums v. State, 55 Texas Crim. Rep., 356, 116 S. W. Rep., 590; Branch's Ann. P. C., page 1321.

The evidence in regard to diligence on the part of the grand jury is as above quoted from the testimony of the witness Birdwell who was foreman of the grand jury. If Beck had been introduced, and the grand jury knew of Beck because they allege he was owner in the first count of the indictment, he could have shown by his testimony and the records of his office, or want of record facts, whether the tires reached Big Sandy or not. He was the express agent at that point. He was not introduced nor brought to trial as a witness. He must have been before the grand jury under the circumstances stated; at least there was evidence before the grand jury to show that they believed he was the owner and in possession, because they so allege in the first count. But he was not introduced on this trial to show that the goods did not reach Big Sandy and pass into his possession as express agent. If the goods were shipped and in transit were lost between Dallas and Big Sandy, those in charge of the goods on the train and whose business it was to look after them and make records in regard to them, could have been introduced. Their names could easily have been ascertained from the express company. Their management as shown by the evidence was to keep in strict touch with the express company's business, showing indeed a very marked familiarity with the express company's business. They testified to the matters in regard to the duty of the agents in charge and to the relation of their employees on the train in taking care of express company's shipments enroute to their destination. The testimony of Birdwell does not meet the requirements of the law. All that he did testify was that they tried to ascertain from whom appellant received the goods. That would hardly bear upon the question of who the owner was. He might have received them from anybody who had stolen them or purchased them. The owner under the circumstances was the express company or its agents on the train in charge of the goods. The point of their disappearance could have been stated with almost accuracy if it occurred enroute from Dallas to Big Sandy. We suppose from this record that the goods did disappear at some point between Dallas and Big Sandy inasmuch as the State abandoned the count charging the goods in possession of Beck at Big Sandy. This question was raised by the defendant in several ways, both as to the sufficiency of the facts to meet the allegation in the indictment and special charges which were requested and refused.

. The appellant's theory of the case is that he purchased the goods in Big Sandy from a man who gave his name as Hughes. This was proved by several witnesses who witnessed the purchase and payment for the tires, and one witness, a business man or merchant in the town of Big Sandy, stated appellant did not have sufficient money

to pay for the tires at the time, it being after banking hours and he could not get a check cashed, he let appellant have $55 to make a sufficient sum to pay Hughes for the goods.   There are witnesses who purchased ·tires the same evening from Hughes, some in Big Sandy and others before Hughes reached Big Sandy.   They traced Hughes through the country trying to sell tires before he reached Big Sandy, coming from direction of Dallas.   These witnesses were farmers in the country and business men around the town of Big Sandy.   If appellant's theory about it is correct, he was not guilty of any violation of the law, either of theft or fraudulent receiving.

There are quite a number of questions in the case of importance and of serious moment, but inasmuch as the case must be reversed under the authorities for the point discussed, a review of those matters is pretermitted.

For the reasons indicated the judgment will be reversed and the cause remanded.