WALTER MAE GIPSON V. THE STATE.

No. 22070. Delivered April 15, 1942.
Rehearing Denied May 27, 1942.

The opinion states the case.

*Hardin & Johnson,* of Dallas, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was given a sentence of ten years in the penitentiary by a jury in Dallas County on a charge of assault to murder.

A. L. Curtis, the prosecuting witness, was the operator of a bus for the Dallas Railway & Terminal Company. On August 9, 1941, appellant entered his bus with a large number of other negroes and when one of the passengers, a negro girl, desired to make her exit from the bus she approached the front door and the operator told her, in accordance with company rules,

that she should make her exit from the side door, which she did. The appellant, hearing what was said, remarked to the girl, "Tell him you will get off at any damn door you please." The operator then noticed that she was sitting in one of the seats in the section marked for whites and asked her to move back into the colored section. She declined to do so and he asked her for the third time, after which he remarked, "I will not ask you any more to move back." This seemed to anger appellant who then moved and engaged in a conversation with the other negroes on the bus, about twenty-three in number, and the witness heard a negro man say to her, "Go back up there and sit down and do what you want to and we will stand behind you." To this the appellant relied, "No, I wil get even with him later; I go prepared." When the bus reached the end of the run all passengers had left except appellant and one other. It appears that in properly making their exit for a connection with another bus she should have turned to her right as she alighted from the bus. The operator noticed after he stopped his bus, opened the front door and released the latch on the side door, that the appellant was standing behind her seat with bundles in her arms and one hand in her purse, but looking at the witness, at which time she remarked, "All right, you white son-of-a-bitch, get ready." He jumped from his bus, leaving through the front door, and appellant alighted from the side door, turned to her left and approached the witness, who describes the things that followed in the following language:

"* * * at that time as she was coming toward me she had a knife in her hand like this (indicating) ; * * * she came right to me and struck at me with the knife like this (indicating by raising right hand and striking downward). I threw up my left hand to ward off that lick and the blade of the knife struck my left hand, cutting the hand which I am now exhibiting to the jury, the blade entering between the thumb and forefinger and cutting downward, causing this wound (exhibiting left hand to the jury) ; it was necessary to take 12 stitches in that left hand; the defendant in striking that first lick used the knife in this manner (indicating by raising right hand and striking downward) and if I had not warded off that first lick with my hand the knife blade would have struck me directly over the heart. I then hit the defendant on the shoulder with that blackjack and she then struck me again with the knife; the second blow she struck me cut a gash on my right forearm from four to five inches long, which I am exhibiting to the jury; it was necessary to take fifteen stitches in that wound;

that gash, that wound in the forearm, was two inches deep in the center and one and one-half inches deep at the ends. When the defendant struck me that first lick which I warded off with my left hand, at that time I hit her some place on the shoulder with the blackjack and at the time she struck me the second blow, I struck her on the arm with the black-jack and broke it. * * * all of this time, during this difficulty outside of the bus, the defendant was trying to cut me with that knife; after she cut me the second time, I ran, and right at this time, six or seven colored people drove up in a car, and I ran back and got my money changer off the bus, and then ran back across the street to the Log Lodge Tavern, which was just across the street, and the defendant got in this car with these colored people and they drove her off. I took the license number of that automobile and gave that information to a police officer, Mr. Steen. At that time I did not know the defendant's name, nor where she worked. * * *"

Appellant predicates her grounds for reversal on one proposition only—that the penalty for the offense proven is too severe and that the verdict of the jury is violative of Art. 8 of the Federal Constitution and also Art. 1, Sec. 13 of the Constitution of Texas, each of which provides that no cruel or unusual punishment shall be inflicted.

It was held in Calhoun v. State, 214 S. W. 335, that this Court has jurisdiction to review the question as to whether or not the punishment is excessive. Appellant relies on this decision as a proper interpretation of her rights under the Constitution. That was a death sentence case in which it was held, in a prosecution for rape, that the evidence of want of consent was insufficient. Other errors were found in the record. Conceding the question of law announced, nevertheless, we find nothing helpful in this decision under the facts.

Appellant brought a number of witnesses who testified as to her good reputation for truth and veracity and as being a peaceable, law-abiding citizen, all of which is well and, no doubt, was given due consideration by the jury to whom the responsibility of fixing the punishment is intrusted. We are charged with the duty of determining whether or not there is evidence sufficient to support the verdict rendered and not with saying that the jury should have fixed a lesser penalty, unless it appears that the punishment assessed is unusual and

cruel. Under the facts of this case as above quoted, we know of no precedent for holding that the jury could not, in their discretion, assess the penalty of ten years in the penitentiary. They apparently believed the evidence presented by the State. According to it there were expressions indicating malice and her threats, coupled with an immediate assault with the weapon used, evidenced by the wounds inflicted, fully warranted the verdict which the jury returned and would have sustained them had they assessed the extreme penalty provided by law for·the offense charged.

The judgment of the trial court is affirmed.

ON MOTION FOR REHEARING.

KRUEGER, Judge.

The only ground urged in the appellant's motion for a rehearing is that the holding of this court is contrary to the law applicable to this case. This presents nothing new and fails to direct our attention to any specific error in the original opinion. However, we have again reviewed the record most carefully but find nothing therein which convinces us that we committed any error in the original disposition of this case. Therefore, the motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.